**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION AT SANTA ANA**

**HONORABLE DAVID O. CARTER, JUDGE PRESIDING**

**CERTIFIED TRANSCRIPT**

| | |
|---|---|
| JOHN C. EASTMAN, | ) |
| | ) |
| PLAINTIFF, | ) |
| | ) |
| vs. | ) SACV NO. 22-00099-DOC-DFM |
| | ) |
| BENNIE G. THOMPSON, ET AL., | ) |
| | ) |
| DEFENDANTS. | ) |
| _____ | ) |

REPORTER'S TRANSCRIPT OF PROCEEDINGS

ZOOM VIDEO CONFERENCE

SANTA ANA, CALIFORNIA

MONDAY, JANUARY 31, 2022

2:28 P.M.

**DEBORAH D. PARKER, CSR 10342**
**OFFICIAL COURT REPORTER**
**UNITED STATES DISTRICT COURT**
**411 WEST FOURTH STREET**
**SUITE 1-053**
**SANTA ANA, CALIFORNIA 92701**
**(657) 229-4305**
**transcripts@ddparker.com**

*Deborah D. Parker, U.S. Court Reporter*

**REMOTE APPEARANCES OF COUNSEL:**

FOR THE PLAINTIFF, JOHN C. EASTMAN:

                    CHARLES BURNHAM
                    BURNHAM & GOROKHOV, PLLC
                    1424 K STREET NW
                    SUITE 500
                    WASHINGTON, D.C. 20005
                    (202) 386-6920
                    charles@burnhamgorokhov.com

FOR THE DEFENDANTS, BENNIE G. THOMPSON, ET AL.:

                    DOUGLAS N. LETTER
                    OFFICE OF GENERAL COUNSEL
                    U.S. HOUSE OF REPRESENTATIVES
                    5140 O'NEILL HOUSE OFFICE BUILDING
                    WASHINGTON, D.C. 20515
                    (202) 225-9700
                    douglas.letter@mail.house.gov

FOR THE DEFENDANT, CHAPMAN UNIVERSITY:

                    FRED M. PLEVIN
                    PAUL PLEVIN SULLIVAN & CONNAUGHTON
                    101 WEST BROADWAY
                    9th FLOOR
                    SAN DIEGO, CALIFORNIA 92101
                    (619) 237-5200
                    fplevin@paulplevin.com

```
 1      SANTA ANA, CALIFORNIA; MONDAY, JANUARY 31, 2022; 2:28 P.M.

 2                              -o0o-

 3               THE COURT:  Kelly, first of all, am I on the

 4      video?

 5               THE CLERK:  Yes, Your Honor.

 6               THE COURT:  Folks, I'm going to wave at you.

 7               Can you see me waving?  If you can, just wave back

 8      or put your thumb up.  I appreciate it.

 9               First of all, I hope all of you are doing well,

10      and I hope your families are well in this period of time.

11               And we'll call the matter to order, which is

12      SACV 22-00099-DOC, John C. Eastman v. Bennie G. Thompson, et

13      al.

14               And, on behalf of Mr. Eastman, Mr. Eastman, are

15      you present?

16               DR. EASTMAN:  Yes, Your Honor.

17               THE COURT:  Thank you.  I can hear you.

18               Are you also on video, sir?  Can I see you?

19               DR. EASTMAN:  I am, but it's not showing up.  I

20      don't know why.  I got the camera on.

21               THE COURT:  All right.  Thank you.

22               Can you see me and hear me?  Obviously, you can

23      hear me.

24               Can you see me?

25               DR. EASTMAN:  I can see you as well.
```

*Deborah D. Parker, U.S. Court Reporter*

4

| | | |
|---|---|---|
| 02:29:38 | 1 | THE COURT:  All right.  Thank you. |
| | 2 | And your counsel? |
| | 3 | MR. BURNHAM:  Good afternoon, Your Honor. |
| | 4 | Charles Burnham, on behalf of the plaintiff, |
| 02:29:46 | 5 | Dr. Eastman. |
| | 6 | THE COURT:  And are you here on the West Coast or |
| | 7 | the East Coast at the present time? |
| | 8 | MR. BURNHAM:  I'm appearing from Maryland, |
| | 9 | Your Honor. |
| 02:29:55 | 10 | THE COURT:  Thank you very much. |
| | 11 | And on behalf of the Select Committee? |
| | 12 | MR. LETTER:  Your Honor, this is Douglas Letter, |
| | 13 | General Counsel, U.S. House of Representatives. |
| | 14 | I'm appearing from Maryland as well. |
| 02:30:08 | 15 | THE COURT:  And, Mr. Plevin, on behalf of Chapman? |
| | 16 | MR. PLEVIN:  Good afternoon, Your Honor. |
| | 17 | Fred Plevin.  I'm appearing from San Diego. |
| | 18 | THE COURT:  All right.  Thank you. |
| | 19 | Are there any other parties?  Or, Counsel, are |
| 02:30:20 | 20 | there any other associates that wish to make an appearance |
| | 21 | today? |
| | 22 | All right.  Hearing none. |
| | 23 | First of all, the Court received all of the |
| | 24 | parties' status reports last Wednesday and on Friday. |
| 02:30:35 | 25 | On Friday, the Select Committee received the first |

*Deborah D. Parker, U.S. Court Reporter*

02:30:40  1   day of documents and the Court received the first privilege

2   log.  And I expect to receive the Select Committee's

3   objections to Friday's privilege log on this Wednesday.

4         And I want to begin by expressing my appreciation

02:31:00  5   to all counsel working together to procure an electronic

6   discovery system.

7         Now, just a moment.  We have an MIS person who's

8   going to help me for a moment.

9         *(Pause)*

02:31:13 10       THE COURT:  There.

11       Mr. Eastman, I can see you now for the first time.

12   I've got some technical help here.

13       And can you put that up for the gallery, so I can

14   see all of the folks?

02:31:37 15       *(Pause)*

16       THE COURT:  All right.  Thank you so much.

17       The subpoena gave a date range for documents from

18   November 3rd, 2020 through January 20th, 2021.  The subpoena

19   did not specify a prioritization order but instructed that

02:32:17 20   documents should be "produced sequentially."  And that's at

21   Paragraph 18.

22       In its filing last week, the Select Committee

23   requested that Dr. Eastman, quote, "begin his review and

24   production with e-mails dated January 4th, 2021 through

02:32:38 25   January 7th, 2021."  And that is in the Defendants' Second

*Deborah D. Parker, U.S. Court Reporter*

02:32:43   1   Status Report, Docket 58, at 2.

           2           So, Mr. Letter, on behalf of the

           3   House Select Committee, does it raise separation of powers

           4   issues for this Court to order Dr. Eastman to begin with

02:33:00   5   specific dates when this is a congressional investigation?

           6           And is it appropriate for this Court to order

           7   Dr. Eastman to begin with specific dates when the subpoena

           8   included no such specifications?

           9           And a third general question in this area is:  If

02:33:21  10   this was the Select Committee's intention, why did the

          11   subpoena not lay out an order for Dr. Eastman or Chapman to

          12   prioritize production of documents?

          13           And, please, sir, I'd like to have an answer from

          14   you, please.

02:33:36  15           MR. LETTER:  Yes, Your Honor.

          16           Starting with your first question, Your Honor, I

          17   don't believe that it would be a violation of separation of

          18   powers in a way if the -- given we are in litigation before

          19   this Court and the House of Representatives has asked

02:33:52  20   Your Honor to structure the proceedings that are going on

          21   before the Court in a particular way.  Obviously, if there

          22   were no court proceedings, if this was simply a matter

          23   between the House of Representatives and Professor Eastman,

          24   that would be a completely different matter.  But since this

02:34:15  25   Court has fully seized of this and has made the request --

*Deborah D. Parker, U.S. Court Reporter*

02:34:18  1   and the House of Representatives has made the request, we

2   don't see any reason why it would violate separation of

3   powers for the Court to structure the proceedings.

4          THE COURT:  Since, eventually, we're going to go

02:34:31  5   through all 19,000-plus e-mails and now, apparently, 92,000

6   pages of documents, I'm not certain that it's appropriate to

7   order Dr. Eastman to begin with specific dates, when the

8   subpoena included no such specifications.

9          MR. LETTER:  Well, Your Honor, remember that this

02:34:57  10  is not a subpoena to Professor Eastman.  This is a subpoena

11  to Chapman.  We did not ask Chapman to do any kind of order

12  in review because, remember, from prior hearing, Chapman

13  University -- produced all of the records using three dates.

14  And so it was our understanding -- as I say, the subpoena

02:35:24  15  was to Chapman University, and Chapman had said to us that

16  the return date should be three days later, because they

17  would give us everything.  And then we internally -- to be

18  blunt, Your Honor -- we would have started with January 6th

19  and 7th.  Those were the two most important dates, as far as

02:35:44  20  our internal analysis.  We then would have gone to 4th and

21  5th and then we would have worked backwards from there.

22          THE COURT:  But the subpoena did not lay out an

23  order for either Dr. Chapman -- I'm sorry, Dr. Eastman or

24  Chapman to prioritize production of documents; is that

02:35:59  25  correct?

02:36:00   1          MR. LETTER:  That's correct, Your Honor.

2          Again, Chapman said it was going to give us

3    everything within three days all at once.  We contemplated

4    asking Chapman to do some sort of rolling production; but

02:36:11   5    Chapman made clear that they needed this three days, and

6    they were going to give us everything all at once.

7          THE COURT:  I see.  Well, before last Friday, this

8    Court and, apparently, the parties knew only that there were

9    approximately 19,000 documents.  After counting the pages

02:36:32  10   last week, Dr. Eastman reported that there were in fact

11   21,396 documents, totaling 94,153 pages.  And that's at

12   Document 56, for your records, paragraph 5.

13          The report states that approximately 2,500 of the

14   documents are e-mail attachments which were not included in

02:37:01  15   Chapman's original document count.

16          So, Dr. Eastman, what is the exact number of

17   attachments in the set?

18          MR. BURNHAM:  My understanding is that -- well,

19   the number of attachments is equal to the difference between

02:37:19  20   Chapman's original page count, as Your Honor has recited,

21   and our ultimate page count of 94,153 over -- spread over

22   21,396 documents.

23          THE COURT:  That doesn't answer my question.

24          *(Court Reporter requests clarification for the*

02:37:44  25          *record.)*

*Deborah D. Parker, U.S. Court Reporter*

02:38:00   1          THE COURT:  Could you restate, Mr. Burnham?

           2          The Court reporter had trouble hearing you.

           3          MR. BURNHAM:  I said, I know Your Honor wants the

           4    number of attachments.  If I was in court, I could confer

02:38:13   5    with my client and let them get it.  But I think I'll just

           6    need another moment that I can --

           7          (Overtalking:  Unable to report.)

           8          THE COURT:  Why don't we take that -- why don't we

           9    take that, right now.  I'd like that answer, please.

02:38:22  10          MR. BURNHAM:  Thank you, Your Honor.

          11          (Pause)

          12          THE COURT:  And, of course, I'm going to ask --

          13    beside the exact number of the attachments, I'd like to know

          14    how many pages in total are the attachments.

02:39:06  15          (Pause)

          16          MR. BURNHAM:  Okay, Your Honor.

          17          I have the answer to the question at least

          18    partially.  Our review, there are 2,399 attachments, spread

          19    over 18,997 e-mails.

02:41:16  20          THE COURT:  Let me repeat that back to you, just

          21    because of the communication difficulties on Zoom.

          22          2,399 attachments; is that correct?

          23          MR. BURNHAM:  Yes, Your Honor.

          24          THE COURT:  And 18,000 -- and I missed the last

02:41:33  25    portion.

*Deborah D. Parker, U.S. Court Reporter*

02:41:35  1          MR. BURNHAM:  18,997 individual e-mails.

2          THE COURT:  Thank you.

3          The Court has now received one day of

4    Dr. Eastman's privilege log.  The log was provided to this

02:41:58  5    Court as a PDF document containing a table.  So Dr. Eastman

6    and Counsel and Mr. Letter and the House Select Committee,

7    moving forward -- First of all, Dr. Eastman, can the

8    privilege log be provided in Excel spreadsheet format to

9    assist the Court in reviewing the challenged entries?

02:42:25 10          And Mr. Letter, on behalf of the House Select

11   Committee, can the House Select Committee submit its

12   objections by adding a new column to the Excel spreadsheet

13   that Dr. Eastman submits to the Court?

14          MR. BURNHAM:  Is that a question for Mr. Letter,

02:42:52 15   or can I respond on behalf of Dr. Eastman to the first part

16   of the --

17          THE COURT:  If you'd like to, please.

18          So, Counsel, can Dr. Eastman --

19          MR. BURNHAM:  Yes, Your Honor.

02:43:08 20          We can -- we'd be happy to provide it in the form

21   of a spreadsheet.  The point is that I'm not sure that ECF

22   would accept an Excel spreadsheet, so perhaps we have to

23   submit that through chambers e-mail.

24          THE COURT:  Well, let me work that out in just a

02:43:23 25   moment.  It would just, I think, save a lot of time until

*Deborah D. Parker, U.S. Court Reporter*

02:43:29   1   the House Select Committee by adding a new column to the

2   Excel spreadsheet that Dr. Eastman submits.  It would be

3   extraordinarily helpful in gathering a record.

4           Mr. Letter.

02:43:43   5       *(Pause)*

6           MR. LETTER:  Your Honor, my colleagues are

7   listening in.  I've asked them to, please, give me an

8   answer.  I'm waiting to hear an answer from the committee

9   staff who would be actually the people doing this.

02:44:01  10           THE COURT:  I would suggest to both of you that's

11  easily done, and I would suggest to you that it would save

12  sitting in my court and doing it.  And I think that this

13  will take a nanosecond.

14           MR. LETTER:  Your Honor --

02:44:14  15           THE COURT:  I'm going to step off the bench now.

16  Why don't you two place a call to each other and resolve

17  this, quickly.

18           Thank you.

19           MR. LETTER:  Your Honor, I have an answer.

02:44:35  20       *(Pause)*

21           THE COURT:  Okay.  Well, thank you very much,

22  Counsel, for consulting with each other.

23           Let me explain in simple terms why, and that is,

24  at the present time, Pacer does not accept Excel files.  And

02:51:40  25  this Court needs Excel to streamline and organize my review

02:51:45  1    of the privilege logs and objections.

       2              And so, therefore, I need the parties to file the

       3    log and objections as a PDF on Pacer and submit the Excel

       4    file to the Court via e-mail.  And I'm searching for any

02:52:06  5    reason why that can't be done.

       6              So, once again, I'll turn to Dr. Eastman and then

       7    I'll turn to the House Select Committee.

       8              So Dr. Eastman.

       9              MR. BURNHAM:  It can be --

02:52:13 10        (Overtalking:  Unable to report.)

      11              THE COURT:  All right.  Thank you very much,

      12    Mr. Burnham.  It's appreciated.

      13              The Committee?

      14              MR. LETTER:  Yes, Your Honor.  We can definitely

02:52:24 15    do that.  We can add a new column to the Excel log.

      16              THE COURT:  All right.

      17              MR. LETTER:  And if I might, Your Honor, if you're

      18    searching for is you want a new column where we indicate

      19    whether we're challenging the assertion, we can certainly do

02:52:39 20    that.  And if the Court wants an explanation of our

      21    challenge, we can put that in Excel.  Or if you desire a

      22    separate writing with any reason for our challenge, we can

      23    do that if and when appropriate.  Whatever Your Honor

      24    wishes.

02:52:55 25              THE COURT:  I do.  And I'll make that clear in the

*Deborah D. Parker, U.S. Court Reporter*

02:52:57  1  order in a few moments, so I try to be polite and search for

2  any reason that this can't be done.  Because to begin with,

3  if we get our format correct, it's going to make it very

4  easy over the next weeks to sort through this.

02:53:11  5        I'm going to go back, Mr. Burnham, because you

6  partially answered my question.  I'm going to repeat that

7  there're 2,399 attachments with 18,997 individualized

8  e-mails.  I would like to know the pages.

9        MR. BURNHAM:  I know the total of the pages, but I

02:53:29 10  don't have a breakdown how many pages for the attachments

11  versus --

12        THE COURT:  How long would that take you?

13     *(Overtalking:  Unable to report.)*

14        THE COURT:  How long would that take you to get?

02:53:38 15        MR. BURNHAM:  Probably -- Dr. Eastman has been

16  following along, and he can -- he'll be looking at that, I'm

17  sure, as I'm answering Your Honor.

18        The answer as to the number of pages is 94,153.

19        THE COURT:  Okay.  The privilege log from Friday,

02:54:09 20  Mr. Burnham and Dr. Eastman, appears to go up to page 1651.

21  Is the first Bates-stamped page, the first document or

22  e-mail from November 3rd, 2020?  And are you reviewing these

23  pages in chronological order, beginning with November 3rd,

24  2020?  And how many pages did you review in total on Friday?

02:54:46 25        MR. BURNHAM:  I'll try to take these questions one

02:54:50   1   at a time.

2   THE COURT:  Okay.  The first Bates-stamped page --

3   the first document or e-mail is the first Bates-stamped

4   page, beginning November 3rd, 2020?

02:55:03   5   MR. BURNHAM:  The answer to that question is, yes.

6   THE COURT:  Okay.  Thank you.

7   Are you reviewing these pages in chronological

8   order, beginning with November 3rd, 2020?

9   MR. BURNHAM:  That's the way we started,

02:55:16  10   Your Honor.

11   THE COURT:  Okay.

12   MR. BURNHAM:  We've had some discussions with the

13   defendants about their preferences, but that's the way we

14   started.

02:55:25  15   THE COURT:  Okay.  And what I don't know yet,

16   leaving it to the discretion initially of both the

17   Select Committee and you in those private discussions, is if

18   the Court should then continue to expect that these are

19   forthcoming sequentially; in other words, date by date,

02:55:42  20   beginning November 3rd and working forward to January 20th,

21   or whether there's going to be some skipping around.  So let

22   me leave that alone for just a moment.

23   According to the log, Dr. Eastman asserts

24   privilege over roughly 244 pages.  So based on the privilege

02:56:02  25   log, at a minimum -- at a minimum, 1,407 pages were

02:56:08  1  unprivileged.

2       Mr. Letter, did you receive the unprivileged

3  documents from Dr. Eastman on Friday?

4       MR. LETTER:  Yes, we did, Your Honor.

02:56:18  5       THE COURT:  Okay.  And if so, how many pages did

6  you receive to verify that for the Court?

7       MR. LETTER:  I'm hereby asking my colleagues to

8  tell me exactly how many pages, Your Honor.  And it's my

9  understanding --

02:56:31  10       THE COURT:  Thank you.

11       Mr. Letter, you can cease now.  Tell me how many

12  pages you received.  If you need to get on the phone, I'd

13  like verification that you received 1,407 pages.

14       MR. LETTER:  I'm waiting for an e-mail that should

02:56:43  15  come any second, telling me that --

16       *(Overtalking:  Unable to report.)*

17       THE COURT:  Let's cease our conversation.

18       MR. LETTER:  I believe that is correct.

19       THE COURT:  Let's wait and we'll cease our

02:56:52  20  conversation until you can verify that.

21       *(Pause)*

22       MR. LETTER:  I was told before that, yes, we

23  received 1 through 1,407.  So that would be correct,

24  Your Honor.

02:57:43  25       THE COURT:  All right.  Thank you so much.

02:57:47  1        Mr. Burnham, how many pages -- or Dr. Eastman, how

2    many pages did you review in total on Friday?

3             MR. BURNHAM:  Setting aside a cursory review and

4    getting -- you know, kind of getting our feet wet with the

02:58:04  5    platform, we stopped our formal review, I think, at the

6    conclusion of the privilege log that was submitted.

7             THE COURT:  Would you restate that, please.

8             MR. BURNHAM:  Setting aside cursory reviews and

9    sort of learning our way around the system, getting the lay

02:58:28 10    of the land type of activity, the end of our formal review

11    coincided with the last document listed on the privilege log

12    that was filed.

13             THE COURT:  So does that mean that you reviewed

14    1,651 pages?

02:58:44 15             MR. BURNHAM:  That's correct.

16             THE COURT:  And that was the total?

17             MR. BURNHAM:  That's correct.

18             THE COURT:  All right.  Thank you.

19             At the rate of 1,500 pages per day, I anticipate

02:59:07 20    that at that rate, it would take approximately 63 business

21    dates to finish going through all 94,153 pages, which is

22    about 13 weeks.  I'm balancing the importance of the

23    attorney-client privilege with Congress' urgent need for

24    these documents, if they're forthcoming.

02:59:28 25             So given the current pace with the fact that the

*Deborah D. Parker, U.S. Court Reporter*

02:59:32  1  review will likely become smoother as the process goes on --

2  and we're in this initial give-and-take, trying to sort out

3  what the Excel Spreadsheet will look like, but it's going to

4  go much smoother -- I'm considering increasing the daily

02:59:49  5  rate to 2,000 pages for every business day or leaving 1,500

6  pages at six days a week instead of five.

7          So I'd ask Dr. Eastman and the Select Committee,

8  what's your preference?  And if you would like to have a

9  private off-the-record conversation by telephone for just a

03:00:08 10  moment, I'd invite that between the two of you.

11          MR. BURNHAM:  We actually had some discussions

12  about that over e-mail.  There's a number of considerations

13  involved in setting the appropriate pace.

14          THE COURT:  No, just a moment, Counsel.  I will be

03:00:26 15  setting that pace, so I'm asking for your participation and

16  I'd like an answer.  And, once again, I'm going to be

17  courteous.  I'm going to step off the bench.  I would like

18  the two of you to call each other offline, and I'd like an

19  answer.  Otherwise, I'll make a decision.  So I'll be back

03:00:41 20  in five minutes.

21          Thank you.

22      *(Pause)*

23          THE COURT:  Hopefully, all you folks can hear and

24  see me, and I can certainly see and hear you.

03:09:26 25          I see you, Mr. Letter.  I don't see Dr. Eastman or

18

```
03:09:31    1    his counsel.

            2            Dr. Eastman, I can see you.  I don't see your

            3    counsel, Mr. Burnham.

            4            Mr. Burnham?  Mr. Burnham?

03:10:03    5            First of all, Mr. Letter, if you can hear me --

            6    you're muted right now.  I cannot hear you.

            7            Mr. Plevin, you're muted right now.

            8            Dr. Eastman, you're muted right now.

            9            I see Charlie Burnham raising his hand, but I

03:10:20   10    don't see him --

           11            THE CLERK:  There he is.  Give him a second.

           12            THE COURT:  Okay.  We'll get everybody back on.

           13        (Pause)

           14            THE COURT:  Mr. Burnham, I can see you now.

03:10:38   15            Can you see and hear me?  I'm waving at you.

           16            Dr. Eastman, can you see me?  I'm waving at you.

           17            Thank you.  You're muted right now.

           18            Mr. Letter, can you see and hear me?  I'm waving

           19    at you.

03:10:49   20            Mr. Plevin, can you see and hear me?  You're muted

           21    also.

           22            Well, then, Counsel, your response, please, from

           23    either Doctor, or -- Dr. Eastman, Mr. Burnham, or

           24    Mr. Letter.

03:11:03   25            MR. LETTER:  Mr. Burnham and I have consulted.  We
```

*Deborah D. Parker, U.S. Court Reporter*

03:11:05  1   have been making proposals to each other.  We would like to

2   make short presentations to you about this very issue, if

3   that's okay with Your Honor.

4            THE COURT:  Please, I would like to hear from both

03:11:16  5   of you before I make a decision.

6            MR. LETTER:  Fine, Your Honor.

7            What we've proposed to Mr. Burnham is that the --

8   basically, all of the pages that were introduced to us were

9   things like news articles, et cetera.  That's 1,400 pages.

03:11:33 10   So that's basically useless.  What we had said to

11   Mr. Burnham, what we proposed is that we're happy to exclude

12   all of that material and to exclude some other material,

13   such as Mr. Eastman's family members, et cetera.

14            THE COURT:  Just one moment.  Just one minute.  I

03:11:52 15   want to go slowly, because I don't understand, yet, the

16   volume of that material.  What do you estimate that volume,

17   such as family material or newspaper articles that are of no

18   value, quite frankly, to either of you?

19            MR. LETTER:  Judge, remember, we don't have the

03:12:12 20   materials.  Only Mr. Burnham can answer that question.

21        *(Overtalking:  Unable to report.)*

22            THE COURT:  Well, just a moment.

23        *(Overtalking:  Unable to report.)*

24            THE COURT:  Thank you.  Thank you.

03:12:18 25            Mr. Burnham, in other words, excluding family

*Deborah D. Parker, U.S. Court Reporter*

03:12:22  1   materials, obviously, that's not relevant and excluding
          2   newspaper articles that could be counted as pages, but quite
          3   frankly are irrelevant to either one of you, can you help me
          4   with that answer?
03:12:36  5          And I can't hear you.  Mr. Burnham?  Mr. Burnham?
          6   I can't hear you.
          7          THE CLERK:  Let me check, Judge.
          8       *(Pause)*
          9          THE COURT:  No?
03:12:56 10          Mr. Burnham, try again.
         11          MR. BURNHAM:  Am I muted now?
         12          THE COURT:  Now you're good.  Thank you, sir.  I
         13   appreciate it.
         14          MR. BURNHAM:  Excluding news articles and Listserv
03:13:05 15   and mass e-mails and things of that nature would eliminate
         16   approximately 30,000 pages --
         17          THE COURT:  Now, just a moment.
         18          MR. BURNHAM:  -- of review.
         19          THE COURT:  Just a moment.
03:13:17 20          MR. BURNHAM:  I don't presently have an estimate
         21   for family members.  We've just been discussing this today,
         22   but that would contribute to the 30,000.
         23          THE COURT:  I want to humbly repeat back the
         24   approximation, and that is, 30,000 of the 94,000 approximate
03:13:35 25   pages are --

03:13:38   1            MR. BURNHAM:  I'm not hearing the Court.

           2            THE COURT:  I apologize.  Let me try again.

           3            Mr. Burnham, can you hear me now?

           4        *(Pause)*

03:13:53   5            THE COURT:  Let me try, again, in just a moment.

           6        *(Pause)*

           7            MR. LETTER:  Your Honor, I'm just letting you know

           8    that I can hear you, so I don't know whether --

           9            THE COURT:  All right.  Mr. Eastman --

03:14:07  10            Dr. Eastman, can you hear me?  I'm waving at you.

          11    Okay.

          12            DR. EASTMAN:  Yes, I can hear you.

          13            THE COURT:  Thank you very much for your courtesy.

          14            Mr. Letter, can you hear me?

03:14:16  15            Mr. Letter?

          16            Okay.  You can hear me.

          17            MR. LETTER:  Yes, Your Honor.

          18            THE COURT:  Mr. Plevin, can you hear me?

          19            MR. PLEVIN:  Yes, Your Honor.

03:14:24  20            THE COURT:  Mr. Burnham, can you hear me now?

          21            MR. BURNHAM:  I can hear you only very, very

          22    faintly, Your Honor.  It's very difficult to hear.  It was

          23    fine until just a moment ago.

          24            THE COURT:  Can all of the rest of you hear me

03:14:43  25    clearly?

*Deborah D. Parker, U.S. Court Reporter*

```
03:14:44   1            Mr. Letter, can you hear me clearly?
           2            MR. LETTER:  Yes, I can, Your Honor.
           3            THE COURT:  Dr. Eastman, can you hear me clearly?
           4            DR. EASTMAN:  Yes, I can, Your Honor.
03:14:51   5            THE COURT:  Okay.  Mr. Plevin, can you hear me
           6    clearly?
           7            MR. PLEVIN:  Clearly, Your Honor.
           8            THE COURT:  Mr. Burnham, there has to be something
           9    on your end of the line, and you're muted right now.  But,
03:15:01  10    possibly, you could unmute.
          11            You're still muted.
          12         (Pause)
          13            THE CLERK:  And now we lost him.
          14            THE COURT:  And now we lost you.
03:15:14  15            Now, you're back.  I can see your lips moving and
          16    there's no sound.
          17            MR. BURNHAM:  The only thing I can think,
          18    Your Honor --
          19            THE COURT:  No, no.  Just a moment.  I can hear
03:15:32  20    you.  Mr. Burnham.  Mr. Burnham.
          21            MR. BURNHAM:  -- here in the courtroom --
          22            THE COURT:  Mr. Burnham, I can hear you perfectly
          23    now.  So whatever you did, thank you.  I can hear you.
          24            DR. EASTMAN:  It seems he still can't hear you,
03:15:50  25    Your Honor. Perhaps we take a minute.  Let him log off and
```

03:15:53  1   log back in.

2           THE COURT:  Log out.  That's a good idea,

3   Dr. Eastman.  Let's take the time.  I'll come back.  And

4   let's see if we can get better communication.  Thank you.

03:16:01  5           How about five minutes for all you folks?  And

6   let's get this in order.

7       *(Pause)*

8           THE COURT:  All right.  Well, thank you.  We're

9   back on the record.

03:25:11 10           And Mr. Burnham, I can see you.

11           Can you see and hear me now?

12           MR. BURNHAM:  Your Honor, I can see you.

13   Your Honor, I'm afraid I still can't hear the Court.  I can

14   hear Your Honor's clerk, just a minute ago.

03:25:33 15           THE COURT:  Can you hear me now?

16           THE CLERK:  Counsel, can you hear me?

17           MR. BURNHAM:  I'm afraid I'm not getting any

18   audio.

19           THE COURT:  Mr. Letter, can you hear me?

03:25:53 20           MR. LETTER:  Yes, Your Honor.

21           THE COURT:  Can you hear me, clearly?

22           MR. LETTER:  Yes, Your Honor.

23           THE COURT:  Mr. Plevin, can you hear me?

24           MR. PLEVIN:  Yes, I can hear you clearly,

03:26:01 25   Your Honor.

03:26:02  1          THE COURT:  Dr. Eastman, can you hear me?

2      *(Pause)*

3          THE COURT:  Dr. Eastman, can you hear me, sir?

4          Mr. Burnham, can you hear me?

03:26:46  5      *(Pause)*

6          THE COURT:  We're going to take another brief

7  recess and try to figure this out.  It's --

8          I can hear you, Mr. Letter.  I can hear you,

9  Mr. Plevin.  I could hear Dr. Eastman, who I cannot hear or

03:27:18 10  see at the present time.

11          And, Mr. Burnham, I can see you, but -- I'm sorry!

12          Can you hear me?

13          DR. EASTMAN:  Your Honor, it's John Eastman.  I

14  can hear you, and I've been added back to the panel list.  I

03:27:36 15  don't know how I got dropped.

16          THE COURT:  All right.  Thank you, Dr. Eastman.  I

17  can see and hear you also.  Thank you for your courtesy.

18          And, Mr. Burnham, can you see and hear me?

19          Mr. Burnham, if -- this has to be on your end.

03:27:55 20  Again, I'm going to take another recess.

21          DR. EASTMAN:  Your Honor, I've just texted him and

22  asked him to just dial in by phone so we can at least have

23  audio.

24          THE COURT:  No, I'm going to see and hear him.

03:28:18 25  There's absolutely no reason -- because I'm being very

*Deborah D. Parker, U.S. Court Reporter*

03:28:23   1   generous and not ordering your appearance personally in my

           2   court at the present time.  We'll get this resolved very

           3   quickly now, or I'm going to make a different kind of order.

           4        *(Pause)*

03:33:43   5            THE COURT:  Let's start again.  And let's start

           6   with Mr. Burnham.

           7            Mr. Burnham, can you see and hear me?

           8            All right.  Mr. Burnham, can you see and hear me?

           9            MR. BURNHAM:  Yes, I can see and hear you fine.

03:34:03  10   Excellent.

          11            THE COURT:  Thank you for your courtesy.  I can

          12   see and hear.

          13            Dr. Eastman, can you see and hear me?

          14            DR. EASTMAN:  Yes, Your Honor.

03:34:10  15            THE COURT:  I can see and hear you also.  Thank

          16   you, sir.

          17            Mr. Plevin, can you see and hear me?

          18            MR. PLEVIN:  Yes, sir.

          19            THE COURT:  Thank you for your courtesy.

03:34:18  20            And, Mr. Letter, can you see and hear me?

          21            MR. LETTER:  Yes, Your Honor.

          22            THE COURT:  All right.  You've indicated to me

          23   that almost one-third of the pages that would be produced

          24   are not relevant to the investigation.  You've stated to me

03:34:39  25   that newspaper articles and subscriptions are amongst those

*Deborah D. Parker, U.S. Court Reporter*

03:34:44  1    approximately 30,000 pages, without information yet

2    concerning e-mails and correspondence or attachments

3    concerning family members, which may not be relevant and not

4    needed to be produced.

03:35:07  5         So, Mr. Burnham, let me turn back to you, before I

6    make an order and once again, re-ask:  Is it your belief

7    that approximately 30,000 pages of the 94,000 pages are in

8    one of two categories:  Newspaper articles and/or

9    subscriptions?

03:35:29 10         MR. BURNHAM:  Yes, approximately, Your Honor.

11         THE COURT:  Approximately.  That's fair enough.

12         And concerning family communications, what is your

13   estimate of family communications that would not be

14   relevant?

03:35:43 15         MR. BURNHAM:  I don't have an estimate of family

16   communications, but one point I think does need to be made

17   that Your Honor stated a moment ago:  Nonresponsive

18   documents involving family or something else didn't need to

19   be produced.  The Government -- the Congressional Defendants

03:36:00 20   actually has taken the position that all of the documents

21   need to be produced whether responsive to the subpoena or

22   not or else included on a sort of nonproduction log.

23         THE COURT:   Understand that.

24         MR. BURNHAM:  And that --

03:36:13 25         THE COURT:  You're getting a little bit ahead of

03:36:16 1  me, Mr. Burnham, so let me go through this sequentially.

2  And bear with me.

3          MR. BURNHAM:  Understood, Your Honor.

4          THE COURT:  The period of time would be about 63

03:36:32 5  business days at 1,500 pages a day.  And before I had put

6  forward one of two options for you; that is, that I am going

7  to either increase this to 2,000 pages a day for each of the

8  five business days or move this to six days a week at 1,500

9  pages a day.  And I was seeking before we got into this

03:37:02 10  discussion the best input of all of the parties, given those

11  two choices.  If, in fact, there is much of the production

12  of these pages that would be irrelevant, as Mr. Letter

13  stated, then the Committee really holds this in their hands

14  to indicate to the Court, as well as you, if there is a

03:37:28 15  stipulation forthcoming from the parties that newspaper

16  articles, subscriptions and family communications are

17  irrelevant and would not be produced.

18          Now, if the Committee takes the position that they

19  want all documents, because there is some distrust, then

03:37:46 20  obviously that's going to lengthen the period of time.  So,

21  Mr. Letter, you seem to communicate with other persons, and

22  you're more than welcome to do so, but I'm going to write an

23  order a short time after we terminate this conversation.

24  And I'm looking for your best input and Mr. Burnham's best

03:38:08 25  input before I write that order.

*Deborah D. Parker, U.S. Court Reporter*

03:38:11  1          So are the parties prepared to stipulate; and if

2    not, I don't know that the Court should be in the position

3    of indicating to the parties with the breadth of this

4    subpoena what is relevant and what is not relevant.  But

03:38:28  5    you've seemed to have already reached an agreement that

6    newspaper articles are relevant and family members matters

7    are relevant.  That's why I'm asking for any time that you

8    need to take today -- and I'm going to encourage you to get

9    on the phone throughout this process, because once we

03:38:42 10    recess, I will be writing an order, and that will be final.

11          So, Mr. Letter, your position?  And Mr. Burnham,

12    your position?

13          MR. LETTER:  Yes, Your Honor.  Our position is, as

14    I said awhile ago, newspaper articles, et cetera, there's no

03:38:57 15    interest, and that is totally fine.  We're also willing to

16    give on family member communications.  We're not -- the

17    problem beyond that is we're not moving to have Mr. Eastman

18    make determinations about what's relevant and what isn't

19    relevant.  So beyond that, we believe --

03:39:15 20          THE COURT:  So let me be very clear.  Are you

21    prepared to stipulate that newspaper articles and personal

22    family member matters are not relevant amongst this

23    30,000-plus pages and need not be produced?

24          You're muted.  Mr. Letter, I can't hear you.

03:39:35 25          MR. LETTER:  I apologize.  I apologize,

*Deborah D. Parker, U.S. Court Reporter*

03:39:36  1  Your Honor.

2       We're willing to stipulate, Your Honor, that those

3  materials do not need to be produced.

4       THE COURT:  Mr. Burnham?

03:39:46  5       MR. BURNHAM:  Accepted stipulation.

6       THE COURT:  All right then.  This is going to

7  cause a substantial reduction in the volume of documents

8  produced and probably reduce the time period by at least

9  40 percent.  And, once again, I have no idea concerning the

03:40:05 10  volume of family correspondence that would be irrelevant,

11  and I'm accepting that there are approximately 30,000 pages

12  of newspaper articles that are not relevant.  This may cut

13  the time, literally, in half.

14       Is your preference 2,000 pages a day or 1,500

03:40:33 15  pages -- I'm sorry, at five business days?  Or is your

16  preference 1,500 pages, six days a week?

17       MR. BURNHAM:  Can I -- *(audio interference)* for a

18  moment --

19       THE COURT:  Certainly.  And if you want to talk to

03:40:49 20  Mr. Letter, Mr. Burnham, once again, I'd encourage that.

21  This is time well spent, because I'm looking for both of

22  your guidance, first.  And I would encourage these phone

23  calls.  Don't worry about the time.  You two have been

24  communicating already.  And I would encourage that continued

03:41:12 25  communication right now before I make that order.

*Deborah D. Parker, U.S. Court Reporter*

03:41:16  1          MR. LETTER:  Your Honor, from the Committee's
       2   perspective, we don't have -- either one that Your Honor
       3   orders would be totally fine with us.  We do not have a
       4   preference on that.  Totally fine with either one,
03:41:27  5   Your Honor.
       6          THE COURT:  Six days a week at 1,500 pages, or
       7   five days a week -- business days at 2,000 pages.
       8          All right.  Mr. Burnham?
       9          MR. BURNHAM:  Your Honor, I'm waiting for an
03:41:42 10   e-mail from Dr. Eastman.
      11          THE COURT:  Okay.
      12          MR. BURNHAM:  He's the laboring oar here.
      13          THE COURT:  Certainly.  Take your time with that.
      14          MR. BURNHAM:  I'll just put --
03:41:51 15          THE COURT:  No, let's wait now before we enter
      16   into just conversation that's meaningless.  Why don't you
      17   two communicate with Dr. Eastman.  Take your time with that.
      18   And I'm right here.  I'm just stepping off the bench, but
      19   I'm within five feet away from the microphone.
03:44:18 20      *(Pause)*
      21          THE COURT:  And I don't see Mr. Burnham, yet.
      22      *(Pause)*
      23          THE COURT:  All right, Counsel.  Then once again,
      24   to be certain, Mr. Burnham can you hear the Court?
03:53:44 25          MR. BURNHAM:  I can hear Your Honor, yes.

03:53:46  1                 THE COURT:  Thank you, sir.

          2                 Dr. Eastman, can you hear the Court?

          3                 DR. EASTMAN:  Yes, Your Honor.

          4                 THE COURT:  And, Mr. Plevin, can you hear the

03:53:52  5     Court?

          6                 MR. PLEVIN:  Yes, Your Honor.

          7                 THE COURT:  Mr. Letter, can you hear the Court?

          8                 MR. LETTER:  Yes, I can, Your Honor.

          9                 THE COURT:  Then I welcome input from any of the

03:54:00 10     parties.

         11                 MR. LETTER:  Your Honor, Mr. Burnham and I have

         12     again talked and, apparently, we -- we're in disagreement.

         13     What we -- the main thing we care about is adjusting so that

         14     Professor Eastman is actually *(audio interference)* to -- by

03:54:24 15     switching the dates that we had mentioned.  We've agreed to

         16     get rid of a whole lot of chat.

         17                 And then as I said, we have no problem either of

         18     the alternatives that Your Honor suggested, and that's

         19     where -- where the House of Representatives is.  We're eager

03:54:43 20     to get rolling on this, with Professor Eastman's

         21     cooperation.

         22                 THE COURT:  Thank you.

         23                 Mr. Burnham, your comment.

         24                 MR. BURNHAM:  Your Honor, there's a

03:54:51 25     counterintuitive aspect to this.  Where, as the number of

*Deborah D. Parker, U.S. Court Reporter*

03:54:56 1   extraneous e-mails is eliminated and the relevant ones are

2   focused on, the more time it's going to take to read more

3   substantive communications and do the necessary privilege

4   analysis.  You know, I did some math at a rate of one minute

03:55:12 5   per page of review and the legal analysis.  That's 25 hours

6   a day to get to 1,500.  So the resolution I would like to

7   see in exchange *(audio interference)* -- but in exchange for

8   voluntarily focusing on certain dates and certain e-mails,

9   we pretty significantly lower, in fact, the quota from 1,500

03:55:35 10   to something else.  And Mr. Letter and I didn't quite come

11   to a meeting of the minds on that.  We did try.  So

12   that's -- that's where we remain.

13        And so to answer the question Your Honor puts to

14   us forward, it's one or the other.  We require relatively

03:55:52 15   lower number, six days a week than the other, but we

16   absolutely maintain our position that it's just not going to

17   be reasonable focusing on the critical document anywhere

18   close to 1,500 a day.  These privilege

19   *(audio interference)* -- requiring some research.  Some are

03:56:07 20   obvious; some of them are not.  And this is something that

21   Dr. Eastman, himself, has to be involved in.  He knows what

22   he's looking at.  We can't hire a contract attorney or use

23   my colleagues, or anything like that.  So that's our

24   position.  It's certainly to keep the quota no higher than

03:56:25 25   it is.  And if anything, to lower it, I'm afraid.

03:56:28  1          THE COURT:  All right.  I'm wondering what

2    process, Mr. Letter, the Select Committee would be

3    suggesting to exclude the approximate 30,000 pages that

4    Mr. Burnham estimates would be newspaper or subscription

03:56:49  5    material?

6          For example, does the House Select Committee still

7    want a non-privilege log?  Or would the House Committee

8    specify certain search terms that would exclude irrelevant

9    information?

03:57:11 10          MR. LETTER:  Your Honor, it would be the latter.

11          Our understanding is, these platforms will all be

12    adjusted.  These search platforms can be adjusted so that we

13    can *(audio interference)* like newspaper articles, et cetera.

14    And, you know, with those kind of newspaper articles, we do

03:57:27 15    not need a privilege log, any kind of log on those.   In

16    order to get this done, we're willing to just have those

17    taken off the table.

18          THE COURT:  Okay.  Mr. Burnham, if I then stayed

19    with the 1,500 pages or even a lower number, recognizing

03:57:43 20    that this might require more work as the days go by, would

21    this be acceptable to you and to Dr. Eastman?

22          MR. BURNHAM:  Staying with 1,500 -- and what was

23    the other condition?  I didn't quite catch you.

24          THE COURT:  I'll have the Select Committee and

03:58:07 25    Mr. Letter repeat his statement to the Court.

03:58:13   1          MR. BURNHAM:  I heard it, Your Honor.  I
           2    understand the exchange of them taking that off the table,
           3    1,500.  If that's -- I do think the number needs to be
           4    lower, but if Your Honor keeps it at 1,500, we'll
03:58:24   5    *(audio interference)* --
           6          THE COURT:  I will eventually, but if that does
           7    become burdensome, I do recognize that as we go along, I may
           8    need to adjust -- I would like to start with 1,500, and I
           9    hear a request not to raise that.  But in exchange, I'm
03:58:42  10    hearing that the Committee will also stipulate along with
          11    you to get rid of this extraneous material and it will
          12    probably shorten the process and possibly cut the time
          13    period in half.  But the Committee somewhat holds that in
          14    the palm of their hand with the subpoena and the way it's
03:59:03  15    worded.  They're offering a stipulation.  You're estimating
          16    about 30,000 pages without us even knowing how many personal
          17    family matters are involved.  So if there were another
          18    10,000 pages, hypothetically, that's literally 40,000 pages
          19    of extraneous material.  And what the Committee, I think,
03:59:22  20    has stated to the Court is that they would specify the
          21    certain search terms that would exclude irrelevant
          22    information, being newspaper articles, subscription and
          23    family matters, and they can adjust.
          24          MR. LETTER:  Your Honor, this is Mr. Letter.
03:59:38  25          Very, very, briefly that -- I'm told that by

03:59:42  1    the -- *(audio interference)*.  We appreciate the exact same

2    thing.  It wouldn't be search terms.

3              THE COURT:  Mr. Burnham?  Dr. Eastman?

4              MR. BURNHAM:  I agree.  The most efficient way to

03:59:58  5    go *(audio interference)*, we can cooperate with that.  We can

6    proceed along the lines, Your Honor just described, so long

7    as we retain discretion to go through the material in

8    whatever way necessary to be most sufficient to us in terms

9    of dates and order and so on.

04:00:17  10   MR. LETTER:  Your Honor, as you know, I'll say one

11   more time, that just seems like an obvious way of defeating

12   what we're -- the subpoena and what we're asking for here.

13   It's quite clear that we're focusing on January 6 and 7 and

14   then going backwards here, January 4 and 5, et cetera.  This

04:00:36  15   is not an attempt to cooperate then with what the Committee

16   is trying to do.  We understand Professor Eastman's position

17   that certain things may be privileged but, otherwise, I

18   don't think that there's any argument that he can,

19   basically, go about this in a way that stymies the

04:00:58  20   Committee.

21        And just one on other thing -- just one other

22   thing, Your Honor, *(audio interference)* with separation of

23   powers.  Remember, that we -- this is because this is in

24   court.  Your Honor has set certain terms.  For instance, the

04:01:12  25   House will pay for the -- the search, et cetera.  And we are

04:01:18  1    not making any argument that any of that is prohibited by

2    separation of powers, so I think this is the same.  I don't

3    see -- this is all part of Your Honor's ability to preside

4    over equitable judicial proceedings.

04:01:35  5             MR. BURNHAM:  Your Honor, if I can respond.

6    Following the Committee's subpoena that they drafted, we're

7    not *(audio interference)*.  We're going very much by the

8    letter of the subpoena.  And I'll give an example why

9    allowing us that discretion that promotes

04:01:48  10   *(audio interference)*.  There might be one document that

11   requires three hours of privilege research.  It's a

12   complicated question.  We can't do that and get through

13   1,500 documents a day.  There might be 3-, 4- or 5,000 pages

14   that can be done in two hours.  That makes it easier.  And

04:02:05  15   so giving us the discretion to just simply follow the term

16   of the Committee's own subpoena will give us the ability to

17   comply with Your Honor's order in the most efficient way and

18   not having to come back to court, filing repeated

19   *(audio interference)*.  That's all we're seeking to do here.

04:02:23  20            MR. LETTER:  And, again, Your Honor, the subpoena

21   was not and is not directed to Dr. Eastman.  The subpoena

22   was directed to Chapman.  It was going to produce all the

23   documents within three days.  And then it was going to be up

24   to us how we would analyze -- go through that -- those

04:02:38  25   materials, so I don't understand why Professor Eastman now

04:02:43  1   gets to decide what he's going to do that's over an extreme

2   long period whereas Chapman is going to give it to us in

3   three days.

4              MR. BURNHAM:  Because Chapman was going

04:02:54  5   *(audio interference)* privilege material and nonresponsive

6   material.  But that absolutely makes it an apple-and-orange

7   comparison.  Chapman was simply going to hand it all over.

8   We are constrained.  We can't do that.  We simply can't.

9   And there's going to take -- much longer than Chapman

04:03:10 10   *(audio interference)*.  Simple explanation.

11             MR. LETTER:  The last thing I'll say, Your Honor,

12   if Professor Eastman can't do this in a way that is to allow

13   the Committee to carry out its important function, we can

14   just switch back to asking Your Honor to rule on whether

04:03:35 15   Chapman will be enjoined from complying with the subpoena as

16   they wish to do.  Again, there's no point in having

17   Professor Eastman defeat the subpoena by taking months to

18   get us the material that Chapman is going to give us

19   directly.  There's a legal argument here, and that's the

04:03:56 20   other way to go about this.  It completely defeats the

21   subpoena -- Professor Eastman is going to keep going on

22   November 4, November 5, et cetera.  We would then need a

23   legal ruling instead.

24             MR. BURNHAM:  Your Honor, the last point.  If the

04:04:17 25   Congressional defendants are effectively pulling out of the

04:04:21  1   compromise that was struck *(audio interference)* -- that

        2   raises the question which I telegraphed in my report.

        3   Dr. Eastman retains First Amendment, House Rules,

        4   Fourth Amendment's claims.  *Those are all that's out there.*

04:04:34  5   Compromise is not something that the Congressional

        6   defendants are in a position to maintain.  I think we have

        7   done everything we can to meet them halfway in the most

        8   reasonable way we can.

        9           THE COURT:  All right.  Counsel, any other

04:04:49 10   comments?

       11           MR. LETTER:  You're not meeting us halfway.  You

       12   clearly are defeating the subpoena.  And we, obviously,

       13   can't go along *(audio interference)*.  There's no point in

       14   having Professor Eastman produce the most relevant materials

04:05:08 15   four months from now.  That's useless.  So then we would

       16   urge the Court to -- if you're going to be allowed to do --

       17           We entered into a compromise in good faith.  And I

       18   think that what's happening now is you're defeating the

       19   subpoena.  And if that's what it comes down to, then we just

04:05:25 20   have to have the legal rulings and go from there.  And we

       21   hope that Chapman is authorized -- is allowed to comply with

       22   the subpoena as they were going to do for their documents.

       23           THE COURT:  Any further comments?

       24           MR. BURNHAM:  No, thank you, Your Honor.

04:05:45 25           THE COURT:  Would you give me just one moment then

04:05:47   1   and I'll be back with you in just one moment.

2            Thank you.

3       *(Pause)*

4            THE COURT:  I'm going to -- I want to see all the

04:20:51   5   folks up on the screen.

6            Mr. Plevin, I have.  Mr. Letter, I have.  I don't

7   have Mr. Burnham or Dr. Eastman yet.

8            Now I have Mr. Burnham.  And I need Dr. Eastman.

9       *(Pause)*

04:21:13  10            THE COURT:  Okay.  Counsel, can all of you see and

11   hear me?

12            I'm waving at you.  Okay.

13            Mr. Plevin, can you hear me, to be certain?

14            Drawing an absolute blank.  Mr. Plevin?

04:21:38  15   Mr. Plevin?

16            Mr. Plevin, can you hear me?

17            MR. PLEVIN:  Yes, Your Honor.

18            THE COURT:  Thank you very much.

19            Mr. Eastman, can you hear me?

04:21:57  20            DR. EASTMAN:  Yes, Your Honor.

21            THE COURT:  Mr. Burnham, can you hear me?

22            MR. BURNHAM:  Yes, Your Honor.

23            THE COURT:  Mr. Letter, can you hear me?

24            MR. LETTER:  Yes, Your Honor.

04:22:03  25            THE COURT:  All right.  Thank you for your

*Deborah D. Parker, U.S. Court Reporter*

04:22:05  1    courtesy.  The parties --

         2               MR. LETTER:  I can, Your Honor.

         3               THE COURT:  The parties have represented that they

         4    can reach a stipulation that would substantially reduce the

04:22:17  5    number of pages that need to be reviewed.

         6               The parties should submit a written stipulation

         7    specifying the procedure for Dr. Eastman to exclude

         8    irrelevant pages by 5:00 p.m. Pacific Standard Time, which

         9    would be 8:00 p.m. Eastern Standard Time tomorrow, as well

04:22:40 10    as the approximate number of pages that Dr. Eastman

        11    anticipates will be excluded.

        12               In light of the increased relevance of these

        13    remaining documents, the Court will maintain Dr. Eastman's

        14    pace at 1,500 pages per business day at the present time.

04:22:59 15    This narrowing should significantly decrease the time needed

        16    for review.

        17               The Court will address the issue of prioritizing

        18    specific dates at a later point.

        19               I want to thank all the parties for their courtesy

04:23:16 20    this evening and bid you a good evening.

        21               MR. LETTER:  Thank you, Your Honor.

        22          (At 4:23 p.m., proceedings were adjourned.)

        23

        24                              -oOo-

        25

*Deborah D. Parker, U.S. Court Reporter*

04:23:26

                              CERTIFICATE

              I hereby certify that pursuant to Section 753,

    Title 28, United States Code, the foregoing is a true and

    correct transcript of the stenographically reported

04:23:26    proceedings as audibly heard via Zoom videoconference in the

    above-entitled matter and that the transcript page format is

    in conformance with the regulations of the Judicial

    Conference of the United States.


04:23:26    Date:  February 2, 2022


                              _____/s/DEBORAH D. PARKER_____
                              DEBORAH D. PARKER, OFFICIAL REPORTER

*Deborah D. Parker, U.S. Court Reporter*