```
                   UNITED STATES DISTRICT COURT
                  CENTRAL DISTRICT OF CALIFORNIA
                  (SOUTHERN DIVISION - SANTA ANA)



JOHN C. EASTMAN,              ) CASE NO: 8:22-CV-00099-DOC-DFM
                              )
             Plaintiff,       )           CIVIL
                              )
    vs.                       )     Santa Ana, California
                              )
BENNIE G. THOMPSON, ET AL.,   )    Monday, February 14, 2022
                              )    (1:11 p.m. to 1:41 p.m.)
             Defendants.      )    (1:51 p.m. to 1:58 p.m.)



                 SCHEDULING CONFERENCE (VIA ZOOM)

            BEFORE THE HONORABLE DAVID O. CARTER,
                 UNITED STATES DISTRICT JUDGE



APPEARANCES:              SEE PAGE 2


Court Reporter:           Recorded; CourtSmart


Courtroom Deputy:         Karlen Dubon / Deborah Lewman


Transcribed by:           Exceptional Reporting Services, Inc.
                          P.O. Box 8365
                          Corpus Christi, TX 78468
                          361 949-2988




Proceedings recorded by electronic sound recording;
transcript produced by transcription service.
```

<u>**APPEARANCES**</u>:


For Plaintiff:            CHARLES BURNHAM, ESQ.
                          Burnham & Gorokhov, PLLC
                          1424 K Street NW
                          Suite 500
                          Washington, DC 20005
                          202-386-6920


Also present:             DR. JOHN C. EASTMAN

For Defendants:           DOUGLAS N. LETTER, ESQ.
                          Office of General Counsel
                          U.S. House of Representatives
                          5140 O'Neill House Office Building
                          Washington, DC 20515
                          202-225-9700

                          FRED M. PLEVIN, ESQ.
                          Paul Plevin Sullivan & Connaughton
                          101 West Broadway
                          9th Floor
                          San Diego, CA 92101

1    **Santa Ana, California; Monday, February 14, 2022; 1:11 p.m.**

2                            **(Remote appearances)**

3                              **(Call to Order)**

4            **THE COURT:**  And, Counsel, we're -- first of all, good

5    morning -- or good afternoon.  We're on the record in the

6    matter of *John Eastman versus Bennie Thompson*, 22-00099.

7            And I can see you.  Can you see and hear me?  And I'm

8    just kind of waving my hand in the air.

9            Mr. Burnham, can you?  Okay.

10           Mr. Plevin, can you?

11           Mr. Letter?

12           Mr. Eastman -- or Dr. Eastman?  Excellent.

13           Then the Court noticed that over the past two weeks,

14   there's been a review and production moving forward in which

15   Dr. Eastman has reviewed, according to my records,

16   approximately 46,000 pages spanning November 1st through the

17   13th of 2020 and January 4th through the 7th of 2021, of which

18   those 46,000 pages contained -- and I believe about 24,000 --

19   let me get my notes for just a moment in the back to be

20   precise.  No, I'm -- give me one moment, Counsel.  I've made

21   some notes.

22           Well, it contained just over 26,000 pages of those

23   46,000 pages which were excluded as irrelevant mass mailings or

24   family communications.  And Dr. Eastman has thus far produced

25   over 8,000 pages to the Select Committee.  The Court today is

4

1    primarily interested in hearing from each of the parties on any

2    hurdles they're facing.  And, further, the request for

3    expedited briefing for the January 4th through 7th, 2021

4    documents.

5            Mr. Letter, let me begin with you.  Are you facing

6    any specific issues you'd like the Court or Dr. Eastman to

7    address?  And I'd like to hear from you.

8            **MR. LETTER:**  Your Honor, I'm sorry.  I didn't hear if

9    you said Mr. Plevin or Mr. Letter.  I apologize.

10           **THE COURT:**  Mr. Letter.

11           **MR. LETTER:**  Oh, thank you.  Okay.  Good afternoon,

12   Your Honor.  Yes, Your Honor.  We're facing major hurdles which

13   is that, in essence, the way this is working is that Professor

14   Eastman has basically a fairly lengthy injunction here because

15   we're getting very little solid information.  A lot of things

16   that we're seeing are privileged claims that are not very well

17   described at all and we are just extremely concerned because we

18   roughly calculate that this will take about another six weeks

19   to complete and even then, we will be left with something that

20   doesn't provide us with much of the information that we very

21   urgently need.

22           We also have some significant concerns because there

23   are claims of attorney-client work product privilege but we're

24   not being told who the client is, in what capacity.  So if it's

25   Trump, does that mean personal, presidential campaign.  We're

1    not being -- we've asked for -- are there retainer agreements?

2    Are there common-interest agreements?  Mr. Burnham has said,

3    well, those were not covered by the subpoena but that doesn't

4    make any sense.  The subpoena was to Chapman.

5              The burden here is on Professor Eastman.  If he's

6    going to claim attorney-client or work product, he has a burden

7    to demonstrate that the material was, indeed, covered by those

8    privileges and that's not happening if you don't even know if

9    there are any retainer agreements.  There can be attorney-

10   client relationships.  It's not favored but there can be, that

11   are oral but there's an enormous amount of material here.

12             We have suspicions about some of this because some of

13   the dates when privileges are being claimed.  We have other

14   information that Professor Eastman was not part of the legal

15   team for that period.  So it's not who -- again, was he

16   representing Mr. Trump, President Trump, Candidate Trump?  What

17   is the retainer agreement?  What does it say?

18             And the main thing is there's a whole burden here

19   that is on Professor Eastman to demonstrate that he's entitled

20   to claim these privileges and as we pointed out, there are very

21   serious issues with that because of his use of the Chapman

22   University system that we think means that either -- nothing

23   was protected or very little.  And that -- I think it's a

24   straight legal issue.

25             In addition, as you know, we have arguments that

1    because of Professor Eastman's prolific statements that were

2    made on social media and in the public that there are all sorts

3    of waiver issues that would probably require in-camera review

4    by Your Honor.  But there seem to be whole subjects that are

5    not covered.

6           And then in addition, there's the whole issue of

7    House recognition.  The House recognizes constitutional

8    privileges.  Other than that, for common-law privileges like

9    work product and attorney-client, the House often will honor

10   those but that's up to the House and the House, on some

11   occasions, doesn't.  And so that's an issue that is within the

12   hands of the House.

13          So this process is playing out in a way that it began

14   with, in essence, giving Professor Eastman a fairly lengthy

15   injunction that's going to continue for quite a while.  And

16   we're -- the Committee is moving, as I've said before, at

17   breakneck speed.  We're getting cooperation from many, many

18   people.  We're finding out lots and lots of information.

19          And Professor Eastman appears to be a central player

20   in the development of a legal strategy to justify a coup which

21   is obviously extremely troubling and some of this, therefore,

22   goes to the very heart of what the Committee is looking into

23   and we're not getting that on the basis of privilege claims

24   that have in no way been properly supported or demonstrated.

25          So that's why, Your Honor, we urge that the Court now

1   set an expedited briefing schedule and allow us to make our

2   arguments to you.  As I say, some of them, I think, are legal

3   arguments.  Others may require some in-camera review by Your

4   Honor but -- and the process can continue but right now, the

5   process is not, we think, either in our interest or what the

6   law requires.

7          **THE COURT:**  Dr. Eastman, the same question.  Would

8   you like -- any specific issues facing you or the Select

9   Committee to address?  And, Mr. Burnham, if you want to respond

10  to that or Dr. Eastman, please.

11         **MR. BURNHAM:**  I'll go ahead and respond.  Thank you,

12  Your Honor.  Your Honor, essentially what the Congressional

13  Defendant's position is, is that Your Honor's January 26th

14  order that they agreed to at the time now isn't sufficient.

15  The January 26th order was placing extremely significant

16  demands on Dr. Eastman requiring a lot of work and we've

17  undertaken extraordinary efforts to comply with it, as we have

18  done day in and day out at the time that it was entered.

19         And I think Your Honor's initial schedule made a lot

20  of sense where around the time where we finished the briefing

21  -- I mean, finished the production, then a briefing schedule

22  would be set and then we would brief up the claims for Your

23  Honor.  And I think that made sense.

24         And now what the Congressional Defendants are

25  basically requesting is to litigate the various privilege

1   issues bit by bit week to week which we think is a tremendously

2   inefficient way to go about it and conflicts with the law of

3   the case and embodied in Your Honor's January 26th order.

4        I also think that the proposed briefing schedule is

5   completely backwards.  As Mr. Letter said several times just

6   today, the burden is on Plaintiff to demonstrate the privilege.

7   And so any briefing schedule should start with an initial brief

8   by the Plaintiff to which the Congressional Defendants can

9   respond and then we'll have an opportunity to reply as the

10  holder of the burden.  And that's what we'd ask the Court to do

11  when the time comes for -- where briefing is ripe.

12       I'm not going to respond point by point to whether

13  there was a coup or the various arguments the Congressional

14  Defendants have made about work product, about the client.

15  We're prepared to respond to that at the appropriate time and

16  we're confident that Your Honor will find our privilege claims

17  to be solid.  Thank you.

18       **THE COURT:**  Concerning the privilege log details,

19  under Federal Rule of Civil Procedure 26, the party claiming

20  privilege must describe documents "in a manner that, without

21  revealing information itself privileged or protected, will

22  enable other parties to assess the claim."

23       A party does not satisfy its burden by offering

24  assertions of privilege that are functionally silent.  For

25  example, offering little information about the basis for the

1    invocation of that privilege and doing so would wrongly

2    encourage strategic manipulation of the discovery process by

3    means of blanket assertions of privilege.

4            The parties represented to the Court that they were

5    meeting and conferring about the level of specificity required

6    in Dr. Eastman's privilege logs.  Now, previously, the Select

7    Committee argued to the Court that, "Plaintiff has not provided

8    sufficient information to determine the validity of Plaintiff's

9    privilege assertions."  That was noticed in the objections on

10   Document 94 on February 10th.

11           So, for example, in Plaintiff's production on

12   February 1st, Plaintiff asserted privilege over Bates Numbers

13   Chapman 004539 and Chapman 004707 with only the notation,

14   "Comm" -- which the Court assumes stands for "Committee" but

15   C-o-m -- C-o-m-m -- "with Co-counsel" as the description.

16           Now, Plaintiff also asserted privilege over Chapman

17   004713 through 4719 with "Memo Re: Legal Theories" as the

18   description.  And similarly, Plaintiff only described Chapman

19   004556 through 004592 and Chapman 004594 through 004630 as

20   "Attachment."

21           When you're filing on Friday, February 11th on behalf

22   of the Select Committee and asking for expedited briefing, have

23   you been able to resolve your concerns about these privilege

24   logs details, Mr. Letter?  And I think from your argument

25   today, I can speculate that you have not but I want to ask

1    because there have been conversations apparently between you

2    and Dr. Eastman and Counsel Burnham concerning these matters.

3    So have you resolved your concerns?

4         **MR. LETTER:**  No, we have not, Your Honor.  We're not

5    even close to it because you have given examples of the kinds

6    of things we're facing.  For instance, sometimes all we have is

7    a correspondence email address which is provided with no name.

8    As you said, there are things like, "Comm to client and

9    counsel," what legislature correspondence impacting possible

10   litigation.

11        I repeat.  We don't know who the client is in a lot

12   of instances.  Client -- again, because Mr. Trump could have

13   been Mr. Trump, President Trump, Candidate Trump, et cetera.

14   We don't know whether they're -- one of the biggest things is

15   we don't know whether there was any attorney-client

16   relationship at all.

17        So I don't want to repeat myself but unless there's

18   something showing that there was even an attorney-client

19   relationship and when -- when did it start, when did it end,

20   what did it cover.  Even if there were more detail, that still

21   wouldn't show that it was covered by the attorney-client

22   relationship if there was no attorney-client relationship.

23        And when there are some messages that there are a

24   fair number of recipients, who are those other people?  Are

25   they attorneys?  Are they agents of attorneys?  Are they just

1   other people who, therefore, would not be covered by any kind

2   of attorney-client relationship or work product relationship?

3          So we're nowhere near what we need and as Mr. Burnham

4   said a moment ago, it's their burden.  So if this is it, they

5   clearly have not met the burden at all because they haven't

6   shown that there is an attorney-client relationship and with

7   whom and when.

8          **THE COURT:**  Mr. Burnham --

9          **MR. SPEAKER:**  Your Honor, we -- sorry, Your Honor.  I

10  didn't mean to interrupt the Court.

11         **THE COURT:**  Well, I was going to ask Mr. Burnham or

12  Dr. Eastman.  Are you satisfied in any of these conversations

13  that the Court is not involved with prior to our hearing today

14  with any resolution from this meeting and conferring with the

15  Select Committee?

16         **MR. BURNHAM:**  Your Honor, I think the only way to

17  address these questions regarding the sufficiency of this

18  description or that description almost have to be taken on a

19  document-by-document basis because for each document, there's

20  different things that you can disclose or not disclose that

21  won't endanger the privilege itself.

22          We've always been happy to answer specific questions

23  from the Defendants.  For example, we've explained to them that

24  at certain times, both Donald Trump himself and the Committee

25  were clients of Dr. Eastman and if they have specific questions

12

1    about one Bates number of another Bates number, we might be

2    able to answer those questions.  It's a little hard to address

3    just generalized claims that the descriptions aren't sufficient

4    enough because, as I said, we're constrained by protecting the

5    privilege itself.

6            **THE COURT:**  Concerning the attorney-client details,

7    Dr. Eastman's privilege logs list the senders and recipients

8    and the respective roles for each contested email.  Now, these

9    roles include attorneys, consultants and staff members and

10   you'll see a summation of that at the bottom of the two-page

11   log.

12           The privilege log also does not specify which, if

13   any, cases the consultants were authorized to work on and the

14   scope of that authorization.  The attorney-client privilege

15   does not attach to all communications with any attorney.  The

16   communications must be between a client and the client's

17   attorney or their agents.

18           And on Friday, February 11th, which is Docket 101,

19   the Select Committee filed a notice seeking evidence of the

20   relevant attorney-client relationships and any applicable joint

21   defense or common interest agreements.  In addition, the Select

22   Committee stated that on February 3rd and February 8th, it

23   asked Dr. Eastman for an engagement letter, retainer agreement

24   or other writing clarifying the scope of his representation of

25   Former President Trump or his campaign.  And the document goes

1   on to allege that Dr. Eastman has allegedly not responded to

2   these requests.

3          So Mr. Letter, on behalf of the Select Committee,

4   what specific information regarding attorney-client

5   relationships do you believe is lacking from the privilege

6   logs, and why do you believe that the Select Committee is

7   entitled to that information?

8          **MR. LETTER:**  Your Honor, as I say, the very first

9   thing we need to know is, is there even any attorney-client

10  relationship at all, what did it cover, the capacity of the

11  person who was supposedly being represented.

12          For example, in a -- I believe there are some claims

13  that have been made of attorney client or attorney work product

14  or both in early November and there's -- it's publicly

15  available, a deposition that Mr. Giuliani gave when he said,

16  (quote), "At this point -- which was November 19 --

17  "Mr. Eastman is not a member of the team."  I don't know

18  exactly when he became a member of the team but my recollection

19  -- best recollection would be sometime in December.  So if

20  Mr. Giuliana was right, then Mr. Eastman looks like had no

21  attorney-client relationship with Mr. Trump at all at that

22  point.

23          Now that may be wrong, I don't know, but that's the

24  kind of thing.  So fine, so show us an engagement letter, show

25  us a common interest something that says that Mr. Trump

14

1   retained Mr. Eastman to represent him, this, that, the other.

2   As I said, this is by far the most basic kind of information

3   that if we don't have, it's very difficult to respond to.

4           And I'll say it one more time, clearly then it means

5   that Mr. Burnham can't be meeting the burden that he has if he

6   can't even show there's a relationship, attorney-client

7   relationship.

8           **MR. BURNHAM:**  Your Honor, I think there's a couple

9   things that --sorry, was the Court about to --

10          **THE COURT:**  No, I just want to make certain that I'm

11  asking you or Dr. Eastman about objections that you might have

12  to providing evidence of the attorney-client relationship to

13  support these privilege assertions, and any objections to

14  providing evidence of consultant or staff relationships to

15  support these privilege associations -- assertions.

16          **MR. BURNHAM:**  Your Honor, I think our first objection

17  is to the unstated priors that sort of underly the Committee's

18  arguments.

19          The work product and privilege claims are not

20  coextensive with whatever is spelled out in common interest

21  agreements or retainer letters or engagement letters or similar

22  documents.  For example, privilege can attach to prospective

23  client communications, to work product undertaken with the view

24  to representing a client later to be engaged, work product

25  discussions, and work product itself can be generated outside

1    the confines of some formally written common interest agreement

2    or similar document.  The underlying assumptions of the

3    Committee's legal position they're asserting here just simply

4    aren't correct.  Certainly written documents are relevant to

5    whether a prospective client, attorney-client relationship or

6    work-product situation existed; but as I said, they're by no

7    means coextensive with that.

8            And secondly, I think Your Honor raised this issue

9    before.  They simply have no authority they can cite to week by

10   week, status by status, demand various documents that they

11   think would be useful to them.  They've cited no authority in

12   support of that request.

13           And our basic position is, when we make our filing

14   before Your Honor -- whenever that date ends up being set --

15   well we're prepared to demonstrate to the Court's satisfaction

16   where and when work product and attorney-client privilege and

17   other privileges apply and to whom.

18           And I'll just note, finally, that another underlying

19   assumption that underlies a lot of this, including in the

20   Government's objection, is that anytime a non-attorney or

21   non-expert is included in a work-product communication, the

22   privilege doesn't apply, that's simply not true.  So there are

23   a number of problems with the positions that the Congressional

24   Defendants are advancing here.

25           **THE COURT:**  Based on the Select Committee's

16

1  representation about which document it deemed priorities, this

2  Court had ordered Dr. Eastman to begin his production with

3  communications from January 4th through January 7th of 2021.

4  Dr. Eastman produced those documents on February 1st and

5  February 2nd.

6        Now given the importance and urgency of the

7  Committee's inquiry, the Court intends to expedite an in-camera

8  review of the challenged documents from those days.  There are

9  a total, according to my count -- and you can correct me --

10  130 challenged documents in that time period comprising

11  568 pages.

12        The Select Committee has suggested the following

13  briefing schedule.

14        The Select Committee's opening brief would be due

15  Monday, February 21st.  Dr. Eastman's response brief due

16  Monday, February 28th.  The Select Committee reply brief due

17  Thursday, March 3rd.

18        So to the Select Committee, how long do you believe

19  is necessary to fully brief your objections to these documents

20  and are you requesting the briefing schedule suggested in your

21  notice from last Friday that I received -- which is

22  Document 101 -- and that briefing schedule is contained on page

23  4, lines 20 through 22.

24        Mr. Letter?

25        **MR. LETTER:**  I apologize, Your Honor.  I wasn't sure

17

1    what you're asking me.

2              We have suggested, as you noted, we have suggested

3    that briefing schedule and I apologize.  I'm not sure.

4              Were you asking me something different from that?

5    I'm sorry.

6              **THE COURT:**  I'll turn to Dr. Eastman then.

7              Really, the same question, Dr. Eastman.

8              How long do you believe it's necessary to fully brief

9    your responses to the objections, and do you have objections to

10   the Select Committee's proposed briefing schedule set forth in

11   Document 101 on page 4?

12             **MR. BURNHAM:**  We do have objections, Your Honor.  The

13   first is as previously stated.

14             I believe the first brief should come from us, rather

15   than the Committee, as they propose, giving us as the holders

16   of the burden an opportunity to reply, so that's the first

17   objection.

18             And the second would be if Your Honor would want to

19   order interim briefing, so to speak, of the critical dates from

20   the Committee's point of view, we'll certainly do our best to

21   comply with that.  I'd ask for two weeks to file our initial

22   brief if Your Honor agrees with our view of the way the

23   briefing schedule should go.  And then however long the

24   Committee needs to respond to that, they can have, and then we

25   won't need very long to reply.

1 **THE COURT:** Given the volume of documents and the

2 objections and responses, I would be inclined to allow

3 oversized briefing in this matter.

4 And how many pages would each of the parties feel

5 comfortable with in this briefing? In other words let's not

6 waste --

7 **MR. BURNHAM:** Just offhand --

8 **THE COURT:** In other words, let's not waste time and

9 start to brief and then come back to the Court and tell the

10 Court that the page limitations are inadequate. Let's get that

11 resolved right now and save some time.

12 **MR. BURNHAM:** Your Honor, would about 40 pages be --

13 we might not need that but about 40 pages, I think, would be a

14 good number.

15 **THE COURT:** Mr. Letter?

16 **MR. LETTER:** Your Honor, that sounds fine to us. I

17 guess we should get a little more if Mr. Burnham -- if we're in

18 the middle and he's getting a reply, maybe we should get a

19 little more than he does but on our briefing schedule we're

20 happy to give him a little more if he's in the middle.

21 **THE COURT:** Well, to balance this out because of the

22 opportunity to respond, would 60 pages total? In other words,

23 whoever is the initial party that the Court directs to file the

24 opening brief would have 40 and the reply would be 20, or

25 whatever number you choose. But the other party who is not the

1    initial opening brief and is doing the responsive briefing

2    would have a total equal number of pages, 60 for instance.  And

3    I don't care what that number is, I just care that each of you

4    have an equal opportunity in terms of the pages that you submit

5    to the Court.  So I don't care if it's 40 and 15 -- which would

6    be a total of 55.  I don't care if it's 40 and 10 but I just

7    don't want to be bothered by a request that you're part way

8    through the briefing and we're wasting time on minutia like

9    this.

10           **MR. LETTER:**  Your Honor, that sounds --

11           **THE COURT:**  So do you want me to step off the bench

12   for just a moment because this is quite frankly what I call not

13   rocket science.  You two can have a conversation and work that

14   out between the two of you.  In fact, I feel a strong need for

15   a cup of coffee.  I'll be back in five minutes, make your

16   decision, thank you.

17           **(Brief recess taken from 1:41 p.m. to 1:51 p.m.)**

18           **THE COURT:**  Mr. Burnham, I can't see you for some

19   reason.  Can you hear me, sir?  There you are.  Thank you.

20           All right.  I can see you, Mr. Letter, I can see

21   Mr. Burnham, I can see Mr. Plevin, I can see Dr. Eastman.  And

22   I think for our purposes, that's sufficient.

23           First of all, thank you for your courtesy.

24           Did you have time just to informally meet and confer,

25   Mr. Letter or Mr. Burnham and Dr. Eastman?

1              **MR. BURNHAM:**  We did, Your Honor.

2              **THE COURT:**  And what would the pagination be -- the

3    number of pages, I'm sorry?

4              **MR. BURNHAM:**  We agreed of 60 per side so --

5              **THE COURT:**  All right.  Sixty per side, thank you.

6              **MR. BURNHAM:**  -- forty for the opening, 20 for the

7    reply and 60 in between.

8              **THE COURT:**  Mr. Burnham, you represented earlier that

9    Dr. Eastman was prepared to demonstrate to the Court's

10   satisfaction where, when, and to whom the privilege is applied.

11   In determining when and how the privilege attaches is an

12   important part of challenging the privilege.

13             If the Court sets an expedited briefing schedule, is

14   Dr. Eastman prepared to provide evidence of attorney and agent

15   relationships, not only to the Court but also to the Select

16   Committee?

17             **MR. BURNHAM:**  To the extent the evidence is not

18   itself privileged, we'd be prepared to demonstrate that, to

19   meet our burden, in other words.

20             **THE COURT:**  Well this would drive at the request by

21   the Committee to show evidence of a actual attorney-client

22   relationship and that might be in the form of an agreement or

23   some other form.  And so I apologize for not understanding the

24   answer.  I'm going to ask you that question again, sir.  And

25   that is --

21

1          **MR. BURNHAM:**  The question is are we willing --

2          **THE COURT:**  It's twofold.  And that is, are you

3    prepared to provide evidence of the attorney and agent

4    relationship, not only to this Court but also to the Select

5    Committee?

6          **MR. BURNHAM:**  We're prepared to provide it to this

7    Court and the Select Committee to the extent the evidence is

8    itself not privileged.  If -- if some of the evidence

9    substantiating the attorney-client relationship is itself

10   privileged -- as is sometimes the case with engagement letters

11   and such -- not always -- there might be an issue there we

12   would have to deal with.  But to the extent that issue can be

13   dealt with, yes, we can provide that.

14         **THE COURT:**  What I --

15         **MR. BURNHAM:**  And perhaps it could be dealt with with

16   a waiver or through redactions or through some method such as

17   that.

18         **THE COURT:**  All right.  Mr. Letter?

19         **MR. LETTER:**  Your Honor, I guess I'm not fully

20   understanding Mr. Burnham's question.  Obviously one of the key

21   things here is relationship with Mr. Trump.

22         It seems to me well at a minimum, everything has to

23   be provided to Your Honor.  Obviously it's, as you know from

24   your years of experience better than I do, the attorney-client

25   privileged claims are often resolved by courts through

1    in-camera inspection.  But a question of -- since Mr. Eastman

2    has been saying, not just in this lawsuit but all over the

3    place, that he was Mr. Trump's attorney, I don't know why there

4    would be any problem with it being provided to us and the

5    public, some sort of retainer agreement about -- and when, how,

6    what -- covering what, et cetera, and for instance and that

7    does apply then also to the work product.

8           We noticed that in a number of cases, Mr. Eastman is

9    asserting work product over emails written by others without

10   any evidence of a privileged relationship.  So if he's going to

11   claim work product over some (indisc.) somebody else, there

12   should be something evidencing a privileged relationship for

13   work product purposes.

14          So again, I would think that almost everything or

15   everything can be provided to us, as well as you, but at a

16   minimum, I don't know why it would be -- I would think

17   everything has to be provided to Your Honor to meet -- and if

18   it isn't, then Mr. Burnham has not met his burden.

19          **MR. BURNHAM:**  I think that's right, Your Honor.

20          To be clear, we're happy to provide everything to the

21   Court, for sure.

22          And I think that's a good reason why it makes sense

23   for us to go first because we'll make our case that the

24   privilege exists and then if the Committee doesn't believe

25   there was an attorney-client relationship, that can be

1   something they can address in the response.  And to the extent

2   possible, we'll try to provide the evidence in support of the

3   attorney-client relationship, not only to Your Honor but to the

4   Defendants to the extent we can do so consistent with the

5   privilege itself.

6           **MR. LETTER:**  In responding briefly to that, Your

7   Honor.

8           Here, we're the ones who are challenging

9   Mr. Burnham's assertion -- Professor Eastman's assertion of the

10  attorney-client privilege.  We think it makes more sense for us

11  to go first and last.  We raise all these points and then

12  Mr. Burnham can provide all the information and then we'll get

13  a last page limited shot at explaining to you why that doesn't

14  meet it.  So we think the way we proposed makes more sense.

15          **THE COURT:**  All right.  Any other comments by

16  Mr. Burnham or Mr. Letter or Dr. Eastman pursuant to this

17  hearing?  And if not, then I'll turn to Mr. Plevin out of a

18  matter of courtesy and to see if he has any comments and then

19  we'll conclude the matter.

20          **MR. LETTER:**  Your Honor, this is Mr. Letter.  I don't

21  have anything further, thank you.

22          **THE COURT:**  All right.  Thank you for your courtesy.

23          Mr. Burnham?

24          **MR. BURNHAM:**  Nothing further, Your Honor, thank you.

25          **THE COURT:**  Thank you.

24

1          Dr. Eastman?

2          **DR. EASTMAN:**  Thank you for the opportunity, Your

3   Honor, but from Chapman's perspective, this is not an issue

4   that concerns us unless either of the parties have questions

5   for Chapman about its email system or policies.

6          **THE COURT:**  All right.  I appreciate the parties'

7   patience and wisdom in this matter and I will issue an order

8   this evening with further directions to each of you.

9          Thank you very much.

10       **(Participants thank the Court)**

11       **(Proceeding adjourned at 1:58 p.m.)**

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

_____          **February 15, 2022**

        Signed                               Dated

*TONI HUDSON, TRANSCRIBER*