Anthony T. Caso (Cal. Bar #88561)
Email: atcaso@ccg1776.com
CONSTITUTIONAL COUNSEL GROUP
174 W Lincoln Ave # 620
Anaheim, CA 92805-2901
Phone: 916-601-1916
Fax: 916-307-5164

Charles Burnham (D.C. Bar# 1003464)*
Email: charles@burnhamgorokhov.com
BURNHAM & GOROKHOV PLLC
1424 K Street NW, Suite 500
Washington, D.C. 20005
Telephone: (202) 386-6920
* admitted pro hac vice

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| JOHN C. EASTMAN, | Case No.: 8:22-cv-00099-DOC-DFM |
| *Plaintiff*, | **DECLARATION OF JOHN C. EASTMAN IN SUPPORT OF PRIVILEGE ASSERTIONS** ("2nd Eastman Decl.") |
| vs. | |
| BENNIE G. THOMPSON, *et al.* | Date: March 9, 2022 |
| *Defendants* | Time: 9:00 a.m. |
| | Judge: Hon. David O. Carter |
| | Magistrate Judge: Hon. Douglas F. McCormick |
| | Crtrm.: 9D |
| | Trial Date: not set |

DECLARATION OF JOHN C. EASTMAN IN SUPPORT OF PRIVILEGE ASSERTIONS - 1

I, John C. Eastman, declare as follows, pursuant to 28 U.S.C. § 1746:

1.      I am an attorney/partner with Constitutional Counsel Group and a Senior Fellow at the Claremont Institute, where I also serve as Director of the Institute's public interest law component, the Center for Constitutional Jurisprudence.  I am the plaintiff in this matter and have personal knowledge of the facts and matters referred to by me herein.

**Chapman University's Common Practice on Clinical and Outside Legal Work**

2.      During the time period that is the subject of the subpoena at issue in this case (until January 14, 2021), I was a tenured professor at Chapman University's Dale E. Fowler School of Law, holding the Henry Salvatori Professor of Law & Community Service endowed professorship.  In that capacity, I taught doctrinal courses in constitutional law and property, among other subjects.  I also co-directed the law school's Constitutional Jurisprudence Clinic, which represented clients before the Supreme Court and various intermediate appellate courts, and in trial-level litigation.

3.      My employment agreement with Chapman University, dated April 9, 1999 and executed on May 25, 1999 and June 15, 1999, expressly acknowledged that, "separate and apart from [my] employment as a Faculty Member," I may also "direct a Center for Constitutional Litigation, a program jointly sponsored by the Chapman University School of Law and the Claremont Institute for the Study of Statesmanship and Political Philosophy."  That authorization was exercised by me with the creation of the Center for Constitutional Jurisprudence at the Claremont Institute in August 1999, through which Chapman law students were provided opportunities to assist in the representation of the Claremont Institute's Center for

DECLARATION OF JOHN C. EASTMAN IN SUPPORT OF PRIVILEGE ASSERTIONS - 2

Constitutional Jurisprudence as *amicus curiae* or in the representation of other clients in cases of constitutional significance.

4.      One such matter arose following the November 2000 presidential election, when I was invited to testify before the Florida Legislature's Select Joint Committee on the Manner of Appointment of Presidential Electors, was formally retained by the Florida Legislature to assist in the drafting of legislation that would protect that State's electoral votes, and participated as an attorney in trial-level litigation in one of the several election challenges.

5.      My post-election work addressing constitutional issues before the Florida legislature and in the district court in Florida was in support of presidential candidate George W. Bush and his campaign committee.  With the knowledge and approval of the Law School's then-Dean, Parham Williams, and the then-Director of the Law School's library, Sheryl Kramer, I engaged several Chapman law students, using the Chapman University email system, to assist with the research for my testimony before the Florida legislature and my ultimate retention by the Florida legislature for the drafting of legislation to protect Florida's electoral votes. That effort was not only supported by the Chapman Law School Dean, it was applauded by top University officials, including (to the best of my recollection) the then-President of the University, James Doti.  And it was touted in the faculty Rank and Tenure Committee's report recommending me for the award of tenure, which acknowledged my "status as one of a very few law professors viewed as expert in the area of election law," adding:

> Professor Eastman spent considerable time in the Fall semester of
> 2000 testifying and preparing to testify before the Florida legislature
> in connection with the presidential election debacle.  This was a
> historic event, and a once in a lifetime opportunity for a scholar with

DECLARATION OF JOHN C. EASTMAN IN SUPPORT OF PRIVILEGE ASSERTIONS - 3

1
2

> this expertise to build a truly national reputation. It was in the Law School's interest that Professor Eastman pursue this opportunity to the fullest ….

3
4
5
6
7
8
9
10
11
12

6.        From 2000 to 2002, I represented The Lincoln Club of Orange County in a constitutional challenge to the City of Irvine, California's campaign finance restrictions on independent expenditures, both in the U.S. District Court for the Central District of California and then, successfully, in the U.S. Court of Appeals for the Ninth Circuit.  The Lincoln Club is an explicitly partisan organization devoted to electing conservative Republicans to office.  Chapman students worked with me on the case, helping with discovery requests and motions in the district court, and then participating in a moot court that was held in the Law School's courtroom in October 2001, which would have been reserved using Chapman's room reservation and approvals system.

13
14
15
16

7.        I was selected as Professor of the Year in 2002 and received expedited tenure and promotion to Full Professor in Spring 2002 and October 2003, respectively.  On information and belief, that was in part because of my high profile work and engagement with students on the 2000 election and the *Lincoln Club* cases.

17
18
19
20

8.        Chapman Law School's promotion and tenure guidelines expressly allowed for academically-oriented legal briefs to be considered in fulfilling the scholarship requirement for promotion and tenure.  As the Rank and Tenure committee noted in its report recommending me for tenure:

21
22
23
24

> In addition to law review articles and chapters in books, the Law School Rank and Tenure Guidelines explicitly treats Amicus Curiae ("rfiend of the court") briefs as a form of scholarship, if written at the same level of quality and with the same depth of research as more traditional forms of published work. Professor Eastman has been prolific in this regard as well, having filed six such briefs before the United States Supreme Court since beginning his career at the Law

25

DECLARATION OF JOHN C. EASTMAN IN SUPPORT OF PRIVILEGE ASSERTIONS - 4

School. … These briefs were written in association with the Claremont Institute Center for Constitutional Jurisprudence, and with the aid of Chapman law students.

9.      Standard 402(c) of the American Bar Association, which was incorporated by reference into the Law Faculty Handbook, defines a full-time professor as follows:

A full-time faculty member is one who, during the academic year, devotes substantially all working time to teaching and legal scholarship, participates in law school governance and service, has no outside office or business activities, and whose outside professional activities, if any, are limited to those that *relate to major academic interests or enrich the faculty member's capacity as scholar and teacher, are of service to the legal profession and the public generally*, and do not unduly interfere with one's responsibilities as a faculty member. (Emphasis added).

10.      My outside work on behalf of the Center for Constitutional Jurisprudence, including my post-election work following the November 2000 presidential election, related (as the Rank & Tenure Committee acknowledged) to my "major academic interests" in constitutional law, enriched my "capacity as scholar and teacher," and were "of service to the legal profession and the public generally." Indeed, the post-2000 election work helped resolve one of the most contentious election challenges in our nation's history.

11.      In my November 15, 2002, Disclosure of Outside Professional Activities, submitted to the Law School's Dean, I noted in the section titled "Outside law practice" that I was the Director of the Claremont Institute's Center for Constitutional Jurisprudence, which at the time afforded Chapman law students

DECLARATION OF JOHN C. EASTMAN IN SUPPORT OF PRIVILEGE ASSERTIONS - 5

1   an opportunity to earn directed research credit for working on the Center's trial and

2   appellate litigation.

3       12.     In 2003, at the request of the Law Faculty, the Center for

4   Constitutional Jurisprudence became more formally engaged with the Law School

5   by sponsoring a constitutional jurisprudence clinic at the Law School, offered at

6   first one semester a year and then both semesters.  Among the work undertaken by

7   that clinic was involvement in post-election litigation over the constitutionality of a

8   2008 ballot initiative in California.

9       13.     The brief we filed in that post-election challenge contained a signature

10  block with my official bar address at Chapman University School of Law, as well

11  as the main Law School phone extension, as follows:

12          David L. Llewellyn, Jr., SBN 71706
            John Eastman, SBN 193726
13          Anthony T. Caso, SBN 88561
            Karen Lugo, SBN 241268
14          *Of counsel*,
            Center for Constitutional Jurisprudence
15          c/o Chapman University School of Law
            One University Drive
16          Orange, California 92866
            (714) 628-2500
17

18      14.     Although the brief addressed an important issue of state constitutional

19  law, namely, whether an amendment to the state constitution adopted by initiative

20  could be "unconstitutional" under the very same state constitution that was just

21  amended, it was contentious because the initiative at issue was Proposition 8, by

22  which the voters of California defined marriage as an institution between a man

23  and a woman.  In response, a number of law faculty, administrators, and student

24  organizations filed a brief on their own, explicitly on behalf of "individual

25  DECLARATION OF JOHN C. EASTMAN IN SUPPORT OF PRIVILEGE ASSERTIONS - 6

Chapman University organizations, faculty, staff, and students," among others. Although the signature block of the brief contained the same "c/o Chapman University School of Law" formulation, together with the Chapman mailing address and law school general phone number, it was not filed under the auspices of any Law School clinic (as mine had been), and by claiming to be representing Chapman University organizations, it conveyed the impression that the University itself was taking a position in the post-election legal challenge.

15.     That controversy yielded some proposed guidelines for clinical and non-clinical legal work by law professors that were circulated by the University's general counsel.  Although to my knowledge the guidelines were never formally adopted, they did provide that a professor working with the legal clinics should ensure that legal filings make clear that the filings were being made on behalf of a clinic client and not on behalf of the University.  "The words 'Chapman University' may not appear on the brief except as part of a c/o address for the author," the proposed guidelines stated, with the following provided as an example:

> Professor Name
> Counsel for Client Name
> c/o Chapman University
> One University Drive, Dept 25##
> Orange, CA 92866

16.     Though never formally adopted, that policy was followed by the clinical professors as common practice.  Non-clinical professors, filing briefs for outside clients that were not part of any clinical program, also submitted court pleadings using their professional Chapman University address, sometimes with "c/o" before the Chapman name and sometimes without even that.  *See*, *e.g.*, Brief

DECLARATION OF JOHN C. EASTMAN IN SUPPORT OF PRIVILEGE ASSERTIONS - 7

of the National Association of Counties *et al.*, *Elijah Manuel v. City of Joliet et al.*,

No. 14-9496 (S.Ct. 2016), which was filed by non-clinical law professor Lawrence

Rosenthal using his Chapman address, phone number, and email, as follows:

> Lawrence Rosenthal
>    *Counsel of Record*
> Chapman University
> Fowler School of Law
> One University Drive
> Orange, CA 92866
> (714) 628-2650
> rosentha@chapman.edu

*See also* Brief of the National League of Cities, *et al.*, *New York State Rifle &*

*Pistol Assoc., et al., v. Kevin P. Bruen, et al.*, No. 20-843 (S.Ct. 2021), which was

filed by non-clinical law professor Lawrence Rosenthal using his Chapman

address, phone number, and email (though without Chapman University's name),

as follows:

> Lawrence Rosenthal
>    *Counsel of Record*
> One University Drive
> Orange, CA 92866
> (714) 628-2650
> rosentha@chapman.edu

17.     Following that well-established and common practice, I prepared my

complaint in intervention on behalf of President Trump using my official bar

address at Chapman University, and I included in the draft a "c/o" before

"Chapman University."  I also consulted with the then-Dean of the Law School,

Matthew Parlow, about the brief, and he requested that, given the contentiousness

of the post-election litigation, I exclude the "c/o Chapman University" from the

signature block altogether, which I did.  The rest of the signature block remained in

DECLARATION OF JOHN C. EASTMAN IN SUPPORT OF PRIVILEGE ASSERTIONS - 8

place, however, including the street address of Chapman University and my Chapman office phone number and email—both of which were the official address for my bar membership at the Supreme Court, as well as the California bar, the annual dues for which were paid *by Chapman*.  That signature block is as follows:

> John C. Eastman
>    *Counsel of Record*
> One University Drive
> Orange, CA 92866
> (714) 628-2587
> jeastman@chapman.edu
> *Counsel for Plaintiff in Intervention*

18.     Far from being "unauthorized," therefore, the brief was submitted in line with prior precedent and common practice at the University and with the advance knowledge of the Law School's Dean.  As I had in 2000 in that post-election controversy, I even enlisted two Chapman Law Students to assist with the representation, which given the high national—even international—profile of the case, they were thrilled to do.

**Representation of President Trump**

19.     The cover letter sent by Select Committee Chairman Bennie Thompson to my attorney, which accompanied the subpoena that the Committee issued to me on November 8, 2021, acknowledged that I "served as an attorney for President Trump in his capacity as a candidate for re-election."  That letter has already been made part of the record in this proceeding, at the initial hearing on January 24, 2022.

20.     My formal appearances on behalf of Candidate Trump and the Donald J. Trump for President Committee, Inc., are a matter of public record.  *See* Motion of Donald J. Trump, President of the United States, To Intervene in his Personal

DECLARATION OF JOHN C. EASTMAN IN SUPPORT OF PRIVILEGE ASSERTIONS - 9

Capacity as Candidate for Re-Election, Proposed Bill of Complaint in Intervention, and Brief in Support of Motion to Intervene, *State of Texas v. Commonwealth of Pennsylvania, et al.*, No. 22O155 (S.Ct., filed Dec. 9, 2020) (Counsel of Record)[1]; Petition for a Writ of Certiorari, *Donald J. Trump for President, Inc. v. Kathy Boockvar, Secretary of the Commonwealth of Pennsylvania, et al.*, No. 20-845 (S.Ct., filed Dec. 21, 2020) (Counsel of Record)[2]; Verified Complaint for Emergency Injunctive and Declaratory Relief, *Donald J. Trump, in his capacity as a candidate for President of the United States v. Brian P. Kemp*, *in his official capacity as Governor of the State of Georgia*, *et al.*, No. 1:20-cv-05310 (N.D. Ga., filed Dec. 31, 2020) (co-counsel).[3]

21.     Those formal representations were undertaken well in advance of the documents generated between January 4, 2021 and January 7, 2021 at issue here, over which I have asserted Attorney-Client privilege and Work-Product protection.

22.     Formal approval for the filing of the cert petition in *Donald J. Trump for President, Inc. v. Bookvar* (the Pennsylvania cert petition) was obtained from Matthew E. Morgan, counsel and agent for Candidate Trump and the Donald J. Trump for President, Inc. campaign committee, on December 17, 2020.

23.     A formal engagement letter for the broader representation of Candidate Trump and his campaign committee, dated December 5, 2020, was transmitted to me on December 6, 2020, a few days before I filed the Motion to

---

[1] Available at https://www.supremecourt.gov/DocketPDF/22/22O155/163234/20201209155327055_No. 22O155 Original Motion to Intervene.pdf.

[2] Available at https://www.supremecourt.gov/search.aspx?filename=/docket/docket files/ html/public/20-845.html

[3] Available at https://storage.courtlistener.com/recap/gov.uscourts.gand.285271/gov.uscourts.gand.285271.1.0_4.pdf

DECLARATION OF JOHN C. EASTMAN IN SUPPORT OF PRIVILEGE ASSERTIONS - 10

Intervene on behalf of the President in the *Texas v. Pennsylvania* original action.
That engagement letter expressly stated that both "Donald J. Trump, in his capacity
as a candidate for President of the United States, and Donald J. Trump for
President, Inc." were the clients covered by the engagement letter.  Attached hereto
as Exhibit A.

24.    The engagement letter also acknowledged that it was setting forth a
scope of engagement that "the Client" had already asked me to undertake, namely,
representing "the Client in federal litigation matters in relation to the 2020
presidential general election, including election matters related to the Electoral
College."

25.    My actual representation of President Trump as candidate and his
campaign committee preceded that engagement letter by approximately three
months.  On September 3, 2020, I was invited by Cleta Mitchell to join an Election
Integrity Working Group, in anticipation of post-electi    on litigation.  Ms.
Mitchell had been deputized by President Trump himself in late August 2020 to
undertake that effort on his behalf.

26.    As a member of the Election Integrity Working Group and in
furtherance of my representation of President Trump as candidate and his
campaign committee, I began conducting legal research and collaborating with
academic advisors and other supporters of the President about the myriad number
of factual and legal issues we anticipated might arise following the election.

27.    On November 7, 2020, I met with members of Trump's legal team in
Philadelphia to provide legal advice on a complaint that was being prepared to
challenge illegal activity in the conduct of the election in Pennsylvania.

DECLARATION OF JOHN C. EASTMAN IN SUPPORT OF PRIVILEGE ASSERTIONS - 11

Case 8:22-cv-00099-DOC-DFM   Document 132-1   Filed 02/22/22   Page 12 of 14   Page ID #:1369

28.     I also provided legal advice on behalf of the President as candidate and his campaign committee in several other legal challenges that were brought in December 2020, including *Donald J. Trump, et al. v. Brad Raffensberger, et al.*, No. 2020CV343255 (Super. Ct. of Fulton Cnty, Ga, filed Dec. 4, 2020); *Donald J. Trump, et al. v. Joseph Biden, et al.*, No. 20-882 (S.Ct., filed Dec. 29, 2020); and *Donald J. Trump v. Wisconsin Elections Bd.*, No. 20-883 (S.Ct., filed Dec. 29. 2020).

29.     In furtherance of my representation of President Trump as candidate and his campaign committee and in anticipation of litigation, I communicated extensively with statistical and other experts to analyze voting anomalies that raised serious questions about the validity of the election in a number of key counties and states.  Several of those experts requested anonymity, for fear of losing their academic or corporate positions and being threatened with violence were it to become known, in the hyper-partisan atmosphere of the post-election litigation, that they were working on statistical analysis with members of President Trump's legal team.

30.     In furtherance of my representation of President Trump as candidate and his campaign committee, I also testified before or otherwise met or communicated with a number of state legislators, to advise them of their constitutional authority under Article II of the Constitution to direct the "manner" of choosing presidential electors, a constitutional authority that was undermined in several states by actions of non-legislative state officials suspending or altering state election laws, which actions we anticipated would result in litigation.

I declare under penalty of perjury that the foregoing is true and correct.

DECLARATION OF JOHN C. EASTMAN IN SUPPORT OF PRIVILEGE ASSERTIONS - 12

1

Executed on February 22, 2022.

2

3                                            /s/ John C. Eastman
                                             John C. Eastman
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    DECLARATION OF JOHN C. EASTMAN IN SUPPORT OF PRIVILEGE ASSERTIONS - 13

1

2

**CERTIFICATE OF SERVICE**

I have served this filing on all counsel through the Court's ECF system.

3

4

Respectfully submitted,

5

/s/ Charles Burnham
Charles Burnham

6

BURNHAM & GOROKHOV PLLC
1424 K Street NW, Suite 500

7

Washington, D.C. 20005
Telephone: (202) 386-6920

8

Email: charles@burnhamgorokhov.com

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

DECLARATION OF JOHN C. EASTMAN IN SUPPORT OF PRIVILEGE ASSERTIONS - 14