# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SOUTHERN DIVISION

JOHN C. EASTMAN

Plaintiff,

vs.

BENNIE G. THOMPSON, *et al.*,

Defendants.

Case No. 8:22-cv-00099-DOC-DFM

## MOTION FOR EXCULPATORY INFORMATION AND CONTINUANCE OF THE MARCH 8 PRIVILEGE HEARING

Comes now the plaintiff John C. Eastman and moves this Court to order the defendants to produce exculpatory information and for a continuance of the March 8 hearing and March 7 reply brief deadline. Plaintiff asserts as follows:

### INTRODUCTION

The congressional defendants have responded to Dr. Eastman's claims of attorney client and work product privilege by invoking the crime fraud exception. The defendants have accused Dr. Eastman, former President Donald J. Trump and others of committing serious federal crimes. Effectively, the defendants have unveiled an entire criminal case under the auspices of a filing on an evidentiary privilege issue.

These are serious accusations which have already made international headlines. They require careful consideration by the Court. Were this Court to sustain the defendants' claims, it may be the first formal finding of Presidential criminality by a federal court in United States history.

In responding to these claims, plaintiff is effectively forced into the position of acting as a pseudo-defense attorney for the former President. If the former President had himself been charged with these alleged crimes, it could easily be years before an ultimate decision was reached by a judge or jury. Yet plaintiff is now faced with responding to these claims in time for a decision by this Court on March 8.

This already impossible task is made more difficult by the defendants' selective presentation of evidence. In support of their crime/fraud claim, the defendants have submitted highly incomplete transcripts which seemingly omit relevant information. At the same time, the defendants are clearly withholding information generated by their investigation which cuts against any crime fraud finding.

The January 6 Committee has offered to disclose "further submissions on specific relevant topics of interest to the Court." This Court should accept the offer and require the committee to disclose all exculpatory information in its possession. This Court should continue the March 8 hearing and reply brief deadline in order to allow plaintiff time to review this information and mount a proper response to the defendant's extremely serious allegations.

**ARGUMENT**

I. **This Court Should Require the Select Committee to Produce All Exculpatory Evidence**

In a criminal case, the prosecuting authority is required to disclose all exculpatory information. *Brady v. Maryland*, 373 U.S. 83 (1963). Any information tending to cast doubt with respect to the proof of any charged count falls within the scope of *Brady*, and must be produced. *Id*. at 87. Information affecting witness credibility must also be disclosed. *Giglio v. United States*, 405 U.S. 150, 153-55 (1972).

Although this is a civil case, the congressional defendants have, to their credit, volunteered to make any disclosures required by the Court. As the defendants' brief states: "[t]*he Select*

*Committee stands ready to make further submissions on specific relevant topics of interest to the Court.*" Resp. at 3, n. 4; *see also*, Resp. at 52 n. 114 ("[t]he Select Committee can make additional evidence available to the Court as requested"). The defendants' laudable willingness to proceed in a transparent manner is appropriate in light of the serious issues involved. This Court should accept the Committee's offer and require the defendants to produce all exculpatory information.

Such disclosure is absolutely necessary for a just resolution of the congressional defendants' explosive claims. The defendants' response is effectively a draft criminal indictment against former President Trump and various named and unnamed alleged coconspirators. It cites specific criminal statutes and accuses the President and his advisers of essentially attempting to subvert American democracy. As stated above, were these allegations brought in criminal court, it would potentially require years of litigation to prepare the case for decision by a judge or jury. It is a monumental task to expect Dr. Eastman to defend this historic claim in the context of a privilege log dispute. At a minimum, Dr. Eastman should be provided with all exculpatory information in the defendants' possession or control.

Although plaintiff is of course not privy to what particular exculpatory evidence may exist in the January 6th committee's vast files, some items of evidence are apparent from the defendants' response itself. The defendants have asked this Court to find that a good faith basis exists to conclude that 1) President Trump is guilty of the felony offense of Obstruction of an Official Proceeding, 2) the President and members of his campaign engaged in a criminal conspiracy to defraud the United States, and 3) the President and members of his campaign engaged in common law fraud in violation of District of Columbia law. Resp. at 39-52. In support of these claims, the defendants argue that "[t]he evidence supports an inference that President Trump and members of his campaign knew he had not won enough legitimate electoral votes to be declared the winner of the 2020 Presidential election during the January 6." Resp. at 41. However, the defendants' brief quotes former Acting

Attorney General Jeffrey Rosen as advising the President that "people are telling you things that are not right." Resp. at 5. In other words, Mr. Rosen acknowledged to the committee that, although he himself apparently saw no evidence of material fraud or illegality, other presidential advisers had given the opposite assessment. To the extent that President Trump received advice and information that material fraud or illegality had occurred in the 2020 election, it would undercut the defendants' claim that he intentionally committed crimes or fraud. As stated, this is just one particularly obvious example of the exculpatory evidence in the committee's possession.

The committee is almost certainly in possession of many other types of exculpatory evidence. Such evidence would include (without limitation) 1) *Giglio* impeaching evidence on the various deponents relied on by the committee, 2) evidence of election irregularities not already in the public domain, 3) evidence of any internal dissent within CISA related to its public statement referenced on page 5 of the response, 4) evidence of any internal dissent within the DOJ with respect to Attorney General Barr's statement on referenced on page 6 of the response, 5) any election investigations discontinued by the DOJ on the grounds that the allegations were not sufficiently "major" (*cf.* Resp. at 7, ln. 4), 6) information received from state officials about election concerns, 7) deposition transcripts or other witness statements which conflict in any way with the depositions submitted in support of the defendants' response, 8) information tending to negate the claim on page 9 line 6 about "false" election certificates, or 9) statements by or attributed to former President Trump which would tend to negate the defendants' allegation of corrupt intent, *e.g.* statements manifesting a genuine belief in election irregularities.

Luckily, the January 6 committee is well staffed to conduct an expeditious *Brady* review of evidence in its possession. The committee's senior staff is largely composed of experienced former federal prosecutors. These capable lawyers are well trained in identifying exculpatory evidence and could easily conduct such a review in this case.

Before finding that a former President is likely guilty of felony crimes, this Court should at a minimum require that evidence on *both sides* of the issue be submitted for consideration. With this request, plaintiff is asking for no more than the due process routinely afforded misdemeanor defendants in hundreds of courts every day. This Court should require at least this level of due process before entering a finding of serious criminality against a former President. The Court should therefore order the defendants to produce any information which would qualify as exculpatory under *Brady* and its progeny if the named criminal offenses had been formally charged by the government.

II. **This Court Should Continue the March 8 Hearing and March 7 Reply Deadline to Allow Plaintiff Time to Obtain and Review Exculpatory Information**

There is manifestly insufficient time for the defendants to produce exculpatory information in time for its effective use by Dr. Eastman on March 8. Plaintiff fully appreciates this Court's oft expressed desire for an expeditious resolution of this matter and has gone to much time and expense to comply with this Court's demanding but fair production schedule. Plaintiff has produced thousands of pages to the defendants and even withdrawn privilege in certain cases where it would arguably apply. However, the recent allegations by the defendants absolutely call for careful rather than rushed consideration.

Under Federal Rule of Civ. Pro. 4, this Court may extend a deadline for "for good cause." The congressional defendants have raised a potentially historic legal claim in the unlikely context of a privilege log dispute. Plaintiff does not dispute the defendants' right to raise such claim or this Court's need to adjudicate it. Plaintiff is merely asking for sufficient time for *all* the evidence to be put before this Court. This is clearly good cause for a reasonable delay of these proceedings.

Alternatively, this Court has the option of bifurcating the privilege hearing, deciding the non crime fraud claims on March 8 and the remaining claims at a later date.

**CONCLUSION**

For the foregoing reasons, plaintiff requests this Court to order the defendants to produce all evidence that would be discoverable under *Brady v. Maryland* and its progeny if the defendants' criminal accusations were formally charged. Plaintiff further requests a continuance of the hearing and reply brief deadline to allow sufficient time to review this information.

March 4, 2022                               Respectfully submitted,

/s/*Anthony T. Caso*

Anthony T. Caso (Cal. Bar #88561)
CONSTITUTIONAL COUNSEL GROUP
174 W Lincoln Ave # 620
Anaheim, CA 92805-2901
Phone: 916-601-1916
Fax: 916-307-5164
Email: atcaso@ccg1776.com


*/s/ Charles Burnham*
Charles Burnham (D.C. Bar # 1003464)
BURNHAM & GOROKHOV PLLC
1424 K Street NW, Suite 500
Washington, D.C. 20005
Email: charles@burnhamgorokhov.com
Telephone: (202) 386-6920


*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this filing has been served on opposing counsel by email.

By: */s/ Charles Burnham*
Charles Burnham
D. Md. Bar 12511
*Attorney for Defendant*
BURNHAM & GOROKHOV, PLLC
1424 K Street NW, Suite 500
Washington, DC 20005
(202) 386-6920 (phone)
(202) 265-2173 (fax)
Charles@burnhamgorokhov.com
