1  Anthony T. Caso (Cal. Bar #88561)
Email: atcaso@ccg1776.com
2  CONSTITUTIONAL COUNSEL GROUP
174 W Lincoln Ave # 620
3  Anaheim, CA 92805-2901
Phone: 916-601-1916
4  Fax: 916-307-5164

5
Charles Burnham (D.C. Bar# 1003464)*
6  Email: charles@burnhamgorokhov.com
BURNHAM & GOROKHOV PLLC
7  1424 K Street NW, Suite 500
Washington, D.C. 20005
8  Telephone: (202) 386-6920
*admitted pro hac vice
9
10  Attorneys for Plaintiff

11

12              UNITED STATES DISTRICT COURT

13     CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

14  JOHN C. EASTMAN,                    Case No.: 8:22-cv-00099-DOC-DFM

15                    Plaintiff,         PLAINTIFF'S STATEMENT OF
    vs.                                  DISPUTED FACTS
16
17  BENNIE G. THOMPSON, et al.          Date: March 8, 2022
                                        Time: 9:00 a.m.
18                    Defendants         Judge: Hon. David O. Carter

19

20

21

22

23

24

25

**PLAINTIFF'S STATEMENT OF DISPUTED FACTS – PAGE 1**

| A. Defendants' Claim | B. Plaintiff's Response |
|---|---|
| 1. "The Select Committee is investigating … an effort by the former President of the United States to remain in office by obstructing Congress's count of the electoral votes. Plaintiff John Eastman purports to have been the former President's lawyer in connection with that effort."  Opp. at 1. | Plaintiff denies any effort to "obstruct" results.  Publicly available materials document a legal argument in favor of the permissibility of a brief delay in the certification process.  *See, e.g.,* Eastman remarks on Jan. 6 ("And all we are demanding of Vice President Pence is this afternoon at 1:00 he let the legislators of the state look into this so we get to the bottom of" the illegality and fraud); Defendants' Ex. N (Eastman email to Jacob at 9:44 pm MST: "adjourn for 10 days to allow the legislatures to finish their investigations"). *See, e.g.,* D's Ex. K (letter from Pennsylvania state senators noting "numerous unlawful violations" of state election law and "usurp[ation] [of] legislative authority" that led them to believe "that PA election results should not have been certified.").

Publicly available memos from Plaintiff specifically state the process may well have resulted in a victory for now President Biden: "If, after investigation, proven fraud and illegality is insufficient to alter the results of the election, the original slate of electors would remain valid. BIDEN WINS."  Opp. at 9 n.27 (citing Jan. 3 Memo on Jan. 6 Scenario, CNN, https://perma.cc/B8XQ-4T3Z) |
| 2. Eastman "spoke at the rally on the morning of January 6, spreading proven falsehoods to the tens of thousands of people attending that rally."  Opp. at 1.

"Plaintiff falsely alleged widespread manipulation and fraud with voting | Defendants have not introduced evidence sufficient for this Court to find that Plaintiff's statements on January 6 were false, let alone impute such knowledge to him on that date. |

**PLAINTIFF'S STATEMENT OF DISPUTED FACTS – PAGE 2**

| | |
|---|---|
| machines, purportedly altering the election outcome." Opp. at 12.<br><br>"And he was even involved in the effort to spread false allegations of election fraud to the public." Opp. at 42. | |
| 3. "that no President can threaten the peaceful transition of power ever again." Opp. at 1. | The defendants have not submitted evidence to support a finding that former President Trump "threatened the peaceful transfer of power." All statements attributed by defendants to the former President concern fraud or illegality in the federal election. |
| 4. "Now [Eastman] is attempting to conceal a range of relevant documents behind claims of attorney-client privilege and work-product protection." Opp. at 1. | As an attorney Plaintiff has a duty to "maintain inviolate the confidence, and at every peril to himself or herself to preserve the secrets of his or her client. California Business an Professions Code 6068(e)(1). |
| 5. Eastman was "reminded that he was not free to use University email and computers in support of a political candidate." Opp. at 2. | The *in camera* materials manifestly involve post-election litigation, not electioneering, campaigning, etc. |
| 6. "On election night, Mr. Trump began falsely asserting, without basis, that he had prevailed…." Opp. at 3<br><br>"President Trump's fraudulent campaign to persuade the American people that the election was in fact stolen." Opp. at 14.<br><br>"based on the false pretense that the election had been stolen." Opp. at 42.<br><br>"Despite these refutations and the absence of any evidence to support the allegations he was making, the President and his associates continued to publicly advance the narrative that the election had been tainted by widespread fraud." Opp. at 46. | Defendants have not introduced evidence sufficient for this Court to conclude that claims of election fraud or illegality were false, let alone that such knowledge should be imputed to President Trump or Plaintiff in the January 4-7, 2021 time period.<br><br>Defendants make no attempt to address the substance of election controversies taking place at the time, let alone subsequent developments which tend to support legitimacy of the controversies. *See*, *e.g.*, Wisconsin Office of the Special Counsel, *Second Interim Investigative Report on the Apparatus & Procedures of the Wisconsin Elections System*, at 7-8 (March 1, 2022) (identifying numerous |

**PLAINTIFF'S STATEMENT OF DISPUTED FACTS – PAGE 3**

| | |
|---|---|
| "the evidence shows that the President made numerous false statements regarding election fraud." Opp. at 47.<br><br>"despite no evidence of widespread voter fraud." Opp. at 50.<br><br>"it appears that President Trump's false statements to his supporters and government officials were informed by Dr. Eastman's extensive advice that the election was stolen." Opp. at 50-51. | examples of election law violations and fraud);[1] *McLinko v. Pennsylvania*, No. 244 M.D. 2021 (Commonwealth Ct. of PA. Jan. 28, 2022) (holding that no-excuse mail-in balloting violated Pennsylvania Constitution). |
| 7. "President Trump's legal team and his supporters took their allegations to the courts, ultimately litigating and losing more than 60 challenges to the election results in seven states." Opp. at 3<br><br>"As the courts were overwhelmingly ruling against President Trump's claims of election misconduct…." Opp. at 5<br><br>"By January 6, more than 60 court cases had rejected legal claims alleging election fraud." Opp. at 45 | The outcomes of election related court cases are not sufficient for this Court to find as a matter of law that any claim of fraud or illegality in the 2020 election was per se false, let alone to impute such knowledge to President Trump or Plaintiff in the January 4-7 time period.<br><br>Moreover, defendants make no attempt to distinguish between election cases decided on the merits versus those decided on jurisdictional or procedural grounds. |
| 9. Trump "and his associates began to plan extra-judicial efforts to overturn the results of the election and prevent the President-elect from assuming office." Opp. at 5 | Defendants have not introduced evidence sufficient for this Court to find any effort to "overturn" an election. |
| 10. "President Trump's January 30, 2022 public statement acknowledges that he was attempting to "overturn" the election on January 6, 2021." Opp. at 5 n.9. | The Presidential statement quoted by defendants specifically references "fraud and many other irregularities.." https://perma.cc/6X2U-E6X2. The statement is consistent with others from the President calling for thorough investigation of election results: |

---

[1] Available at https://legis.wisconsin.gov/assembly/22/brandtjen/media/1552/osc-second-interim-report.pdf.

**PLAINTIFF'S STATEMENT OF DISPUTED FACTS – PAGE 4**

| | |
|---|---|
| | ""Why not let the audit go forward and make everybody, on both sides, happy? *The results will be the results*. But they know it was not an honest election…. Let the Forensic Audit go, Joe. Don't fight it."  Quoted in Josh Gerstein, *Barr shoots down former prosecutor's election-fraud claims*, Politico (July 13, 2021) (emphasis added).[2] |
| 11. "At the heart of these efforts was an aggressive public misinformation campaign to persuade millions of Americans that the election had in fact been stolen."  Opp. at 5 | Defendants have not introduced sufficient evidence for this Court find as a matter of law that the 2020 election was devoid of material fraud or illegality, let alone to impute such knowledge to President Trump in the January 4-7 timeframe. |
| 12. "The President and his associates persisted in making "stolen election" claims even after the President's own appointees at the Department of Justice and the Department of Homeland Security, along with his own campaign staff, had informed the President that his claims were wrong."  Opp. at 5<br><br>"The evidence supports an inference that President Trump and members of his campaign knew he had not won enough legitimate state electoral votes to be declared the winner of the 2020 Presidential election during the January 6 Joint Session of Congress."  Opp. at 41.<br><br>"The President continued this effort despite repeated assurances from countless sources that there was no evidence of widespread election fraud."  Opp. at 45. | The defendants own evidence shows that many advisers counseled President Trump that there had been material fraud or illegality in the 2020 election. On March 6 2022, former Attorney General Bill Barr stated on NBC news that "one of the things is the President was surrounded by these people who would very convincingly make the case for fraud." |

---

[2] Available at https://www.politico.com/news/2021/07/13/barr-election-fraud-claims-499519.

**PLAINTIFF'S STATEMENT OF DISPUTED FACTS – PAGE 5**

| | |
|---|---|
| "At around the same time, researchers working for the President's campaign concluded that several the claims of fraud relating to Dominion voting machines were false."  Opp. at 45.<br><br>"On multiple occasions, acting Attorney General Rosen and acting Deputy Attorney General Donoghue told the President personally that the Department of Justice and Federal Bureau of Investigation had found no evidence to substantiate claims being raised by the President."  Opp. at 45-46.<br><br>"Georgia Secretary of State Brad Raffensperger likewise rebutted many of the President's allegations of fraud in Georgia."  Opp. at 46. | |
| 13. "a campaign data expert told the President "in pretty blunt terms" that he was going to lose."  Opp. at 5 | As stated above, the defendants concede that other Presidential advisers gave conflicting advice.  The defendants have refused to produce this evidence.  ECF 178. |
| 14. "[t]he November 3rd election was the most secure in American history" and "[t]here [wa]s no evidence that any voting system deleted or lost votes, changed votes, or was in any way compromised").  Opp. at 5 n.11.<br><br>"On November 12, 2020, CISA issued a joint statement of election security agencies stating: "There is no evidence that any voting system deleted or lost votes, changed votes, or was in any way compromised."  Opp. at 45. | The CISA statement is not sufficient for this Court to conclude as a matter of law that no material fraud took place in in the 2020 election, let alone to impute this knowledge to Plaintiff or President Trump in the January 4-7 2021 timeframe.<br><br>As plaintiff has continuously pointed out, many presidential advisers did not share that view.  Also, much election related litigation and investigation took place subsequent to the November 12, 2020 CISA statement. |
| 15. "Attorney General William Barr stated publicly that the 'U.S. Justice Department ha[d] uncovered no evidence of widespread voter fraud that | As the defendants concede, other Presidential advisers did not agree with Attorney General Barr's conclusion. |

**PLAINTIFF'S STATEMENT OF DISPUTED FACTS – PAGE 6**

| | |
|---|---|
| could change the outcome of the 2020 election….'" Opp. at 5.<br><br>"In December, Attorney General Barr publicly announced that there was no widespread election fraud." Opp. at 45 | The defendants do not engage with or acknowledge publicly available evidence questioning the DOJ's investigation of the 2020 election. William McSwain, Letter to President Trump (June 9, 2021)(letter from former U.S. attorney stating that election investigations were to be referred to state authorities and not publicized).[3] |
| 16. "specific allegations that Donoghue and Rosen discredited to the President, including … a truck driver who had allegedly driven ballots from New York to Pennsylvania; suitcases of fraudulent ballots allegedly counted in Georgia; and the repeated scanning of ballots" Opp. at 6 n.14 | Defendants conclusory statement that Mr. Rosen had "discredited" various alleged election irregularities is insufficient for this Court to find such irregularities did not occur as a matter of law, let alone impute such knowledge to the President in the January 4-7 timeframe. For example, as stated in Plaintiff's brief, presidential advisor Cleta Mitchell strongly contended that irregularities had indeed taken place in Georgia. |
| 17. "As the President and his associates propagated dangerous misinformation to the public, Plaintiff was a leader in a related effort to persuade state officials to alter their election results based on these same fraudulent claims." Opp. at 7. | Defendants have not introduced sufficient information for this Court to find as a matter of law that the President and his "associates" propagated dangerous misinformation.<br><br>The defendants have also not introduced evidence that Plaintiff sought to persuade state officials to "alter" election results. As stated above, Plaintiff's public stated position was that states should reassess their certifications in light of evidence of fraud and illegality.<br><br>The very news article that Defendants cite for the proposition that legislators were requested to alter election results |

---

[3] Available at
https://cdn.donaldjtrump.com/djtweb/general/Letter_to_President_Trump.pdf.

**PLAINTIFF'S STATEMENT OF DISPUTED FACTS – PAGE 7**

| | | |
|---|---|---|
| 1 | | also notes that the request was "to review evidence that the election process in their states was unlaw and consider decertifying the results.". *See* M. Leahy, *President Trump Joins Call Urging State Legislators to Review Evidence and Consider "Decertifying" Election Results*, Breitbart (Jan. 3, 2021).[4]  Opp. Br. at 7 n. 19. |
| 2, 3, 4, 5 | | |
| 6 | 18. The Trump team reportedly urged the legislators to "decertify" the election results in their states.  Opp. at 7-8. | The defendants rely for this statement on the same news article cited above by M. Leahy.  It recounts an effort to urge lawmakers to "review evidence" and "*consider* decertifying" in light of the evidence. |
| 7, 8, 9 | | |
| 10 | 19. "That same day, President Trump spoke with Georgia Secretary of State Brad Raffensperger, pressing false and unsubstantiated claims of election fraud, and ultimately asking Raffensperger to 'find 11,780 votes' for Trump in the State." Op8.

"ultimately asking Raffensperger to "find 11,780 votes" for him in Georgia."  Opp. at 49. | Defendants have not introduced sufficient evidence for this Court to find as a matter of law that claims about the 2020 election were false, let alone impute that knowledge to the President.

The call in question illustrates the dispute among presidential advisers, with advisers Cleta Mitchell, Kurt Hilbert and Mark Meadows all supporting the Georgia inquiry.

The much quoted "find 11,780 votes" statement is out of context.  As the transcript makes clear, it followed an extended discussion of issues with the Georgia election. The President and his team suspected a much larger pool of fraudulent votes but pointed out 11,780 was the number necessary to correct the outcome of the election.[5] |
| 11–22 | | |

[44] Available at https://www.breitbart.com/politics/2021/01/03/president-trump-joins-call-urging-state-legislators-to-review-evidence-and-consider-decertifying-unlawful-election-results/.

[5] See full transcript available at https://s3.documentcloud.org/documents/7340548/Trump-Transcript-A.pdf.

**PLAINTIFF'S STATEMENT OF DISPUTED FACTS – PAGE 8**

| | |
|---|---|
| 20. "President Trump also took steps that would have corrupted the Department of Justice; he offered the role of Acting Attorney General to another Justice Department political appointee, Jeffrey Clark, knowing that Mr. Clark was pressing to issue official letters to multiple state legislatures, falsely alerting them that the election may have been stolen and urging them to reconsider certified election results." Opp. at 8. | The defendants have not introduced sufficient evidence to find impropriety on behalf of Mr. Clark, let alone that President Trump took steps to "corrupt" the DOJ through elevation of Mr. Clark. |
| 21. "Mr. Trump's team also mounted an effort to obtain false election certificates purporting to demonstrate that the electors of seven states were committed to President Trump rather than President Biden." Opp. at 8<br><br>"The certificates included false statements that they were official." Opp. at 9<br><br>""The President and Plaintiff also took steps to alter the certification of electors from various states." Opp. at 41 | The defendants submit no evidence for this Court to conclude that the alternate election certificates were "false" as opposed to contingent. The defendants admit two of the seven certificates were contingent on their very face. Opp. Br. at 9 n. 26. |
| 22. "Plaintiff advised President Trump to press an unconstitutional plan to disregard those results on January 6." Opp. at 9. | Plaintiff has publicly defended his constitutional arguments on numerous occasions.[6] The Supreme Court has not passed on the constitutionality of these issues. |
| 23. "The text of the Twelfth Amendment to the Constitution clearly describes Congress's obligation to count certified electoral votes." | The relevant portion of the 12th Amendment states: "The President of the Senate shall, in the presence of the Senate and House of Representatives, open all the certificates and the votes shall then be counted." It is ambiguous as to who performs the counting. |

---

[6] *See, e.g.*, https://claremontreviewofbooks.com/constitutional-statesmanship/

**PLAINTIFF'S STATEMENT OF DISPUTED FACTS – PAGE 9**

| | |
|---|---|
| 24. "Nothing in the Constitution permits Congress or the presiding officer (the President of the Senate, Michael R. Pence) to refuse to count certified electoral votes in this context, yet that is precisely what Plaintiff suggested."  Opp. at 9.<br><br>"the specific text of the Twelfth Amendment makes clear that the presiding officer cannot delay the count in this context, by instructing that the presiding officer shall "open all the certificates and the votes shall then be counted . . ." It is not permissible to wait 10 days or any other extended period before counting certified electoral votes."  Opp. at 40. | Defendants here ignore numerous public statements by Plaintiff that his advice had been to delay the count rather than to "refuse to count."<br><br>The defendants offer their own legal theories as to whether a delay in counting is permissible under the 12th Amendment but offer no Supreme Court precedent in support.  The Supreme Court has not considered the question. |
| 25. Jacob "told Plaintiff that what he was proposing was illegal."  Opp. at 10. | The legal opinion of particular lawyers is not conclusive before this Court. Dr. Eastman consistently advanced the position that the 12th Amendment gives certain authority to the Vice President, and that "anything in the Electoral Count Act to the contrary is unconstitutional."  D's Ex. F, p 111:21-22; *see also* D's Ex. N (Eastman email to Jacob at 1:33 pm on Jan. 6: "You're sticking with minor procedural statutes while the Constitution is being shredded"). |
| 26. "advice that Plaintiff admitted no member of the Supreme Court would accept" Opp. at 10.<br><br>"And Plaintiff admitted that not a single Justice of the Supreme Court would agree with his view that the Vice President could refuse to count certain electoral votes.  Opp. at 13-14. | The quoted statements from Mr. Jacob refer to the Supreme Court's consideration of outright rejection of electoral votes.<br><br>Emails submitted by defendants quote Plaintiff as stating to Mr. Jacob that delaying the certification would have a "fair chance" in the courts.  Defendants Ex. N ( "I remain of the view not only would that have been the most prudent course as it would have allowed for the |

**PLAINTIFF'S STATEMENT OF DISPUTED FACTS – PAGE 10**

| | |
|---|---|
| "Plaintiff acknowledged that the Supreme Court would reject such an effort 9-0."  Opp. at 40. | opportunity for this thing to be heard out, but also had a fair chance of being approved (or at least not enjoined) by the Courts.") |
| 27. "President Trump repeatedly attempted to instruct, direct, or pressure the Vice President, in his capacity as President of the Senate, to refuse to count the votes from six states."  Opp. at 10. | The claim that President Trump attempted to pressure Pence "to refuse to count the votes" is belied by Defendants' own evidence, which shows that Pence was asked to "send it back" to the States, not "refuse to count."  See  Opp. at 10 n.33 (citing Donald J. Trump (@realDonaldTrump), Twitter (Jan. 6, 2021 1:00 AM), https://perma.cc/9EV8-XJ7K) ("Mike can send it back");  Opp. at 11 n.34 (citing Donald J. Trump (@realDonaldTrump), Twitter (Jan. 6, 2021 8:17 AM), https://perma.cc/2J3P-VDBV) ("All Mike Pence has to do is send them back to the States").; Opp.12 ("Trump tweeted at 2:24 p.m.: "Mike Pence didn't have the courage to do what should have been done to protect our Country and our Constitution, giving States a chance to certify a corrected set of facts, not the fraudulent or inaccurate ones which they were asked to previously certify. USA demands the truth!"). |
| 28. "Again the next day, Plaintiff tried to persuade the Vice President and his staff that the Vice President should reject certain electors."  Opp. at 10<br><br>"Plaintiff knew about, and 'may have participated in, attempts to encourage the Vice President of the United States to reject the electors from several states or, at the very least, to delay the electoral college results to give states more time to submit different slates of electors.'"  Opp. at 16. | These statements that Plaintiff urged the VP to "reject" or "refuse to count" electoral votes are contradicted by the documentary evidence cited by the Select Committee itself, as the Committee itself seems to acknowledge in the second statement ("or, at the very least, delay").  See D's Ex. N (Eastman email to Jacob at 9:32 pm on Jan. 5, forwarding Pennsylvania Legislators Letter and stating: "This is huge, as it now looks like PA Legislature will vote to recertify its |

**PLAINTIFF'S STATEMENT OF DISPUTED FACTS – PAGE 11**

"Plaintiff was a central figure in the effort to encourage the former Vice President to reject the electors from several states."  Opp. at 36.

"Nothing in the Twelfth Amendment or the Electoral Count Act provides a basis for the presiding officer of the Senate to unilaterally refuse to count electoral votes—for any reason. Any such effort by the presiding officer would violate the law. This is exactly what the Vice President's counsel explained at length to Plaintiff and President Trump before January 6."  Opp. at 40.

"And the Vice President made this crystal clear in writing on January 6: any attempt by the Vice President to take the course of action the President insisted he take would have been *illegal*."  Opp. at 40

"Nevertheless, pursuant to Plaintiff's plan, the President repeatedly asked the Vice President to exercise unilateral authority illegally, as presiding officer of the Joint Session of Congress, to refuse to count electoral votes."  Opp. at 40-41.

"In service of this effort, he and Plaintiff met with the Vice President and his staff several times to advocate that he unilaterally reject and refuse to count or prevent the counting of certified electoral votes, and both also engaged in a public campaign to pressure the Vice President."  Opp. at 41.

electors if Vice President Pence implements the plan we discussed," i.e., "send it back" to the States); *id.* (Eastman email to Jacob at 6:09 pm on Jan. 6, stating: "With all due respect, the VP's statement today claimed the most aggressive position that had been discussed and rejected. 'Some believe that as Vice President, I should be able to accept or reject electoral votes unilaterally.'  We had given him a much more limited option, merely to adjourn to allow state legislatures to continue their work."); *id.*, Eastman email to Jacob at 9:44 pm MST: "adjourn for 10 days to allow the legislatures to finish their investigations, as well as to allow a full forensic audit of the massive amount of illegal activity that has occurred here. If none of that moves the needle, at least a good portion of the 75 million people who supported President Trump will have seen a process that allowed the illegality to be aired."); *see also* Opp. at at 12 (quoting Eastman's Jan. 6 speech: "And all we are demanding of Vice President Pence is this afternoon at 1:00 he let the legislators of the state look into this so we get to the bottom of it").

**PLAINTIFF'S STATEMENT OF DISPUTED FACTS – PAGE 12**

| | |
|---|---|
| "the President and Plaintiff engaged in an extensive public and private campaign to convince the Vice President to reject certain Biden electors or delay the proceedings, without basis, so that the President and his associates would have additional time to manipulate the results."  Opp. at 42.<br><br>"the President and Plaintiff worked jointly to attempt to persuade the Vice President to use his position on January 6, 2021, to reject certified electoral slates submitted by certain states and/or to delay the proceedings by sending the count back to the states."  Opp. at 43.<br><br>"the conspirators also obstructed a lawful governmental function by pressuring the Vice President to violate his duty to count the electoral certificates presented from certain states."  Opp. at 44. | |
| 29. "President Trump explicitly identified the advice given by Plaintiff Eastman when imploring Vice President Pence."  Opp. at 11. | The Committee falsely implies that the "advice" given by Plaintiff, and referenced by Trump in his January 6 speech, was to reject electors unilaterally.  The snippet quoted by the Committee does not support that inference, and other parts of the speech omitted by the Committee are expressly to the contrary.  *See* Donald J. Trump, President, Speech to the "Save America March" and rally (Jan. 6, 2021), https://perma.cc/2YNN-9JR3 ("All Vice President Pence has to do is send it back to the states to recertify…."). |
| 30. "Plaintiff *knew* what he was proposing would violate the law, but he nonetheless urged the Vice President to take those actions."  Opp. at 12. | As noted at above, Plaintiff consistently advanced the argument that where the 12th amendment and the electoral county conflict, the |

**PLAINTIFF'S STATEMENT OF DISPUTED FACTS – PAGE 13**

| | |
|---|---|
| "The Vice President rejected Plaintiff's pleas that he violate the law".  Opp. at 12.<br><br>"Plaintiff's advice about the effort to interfere with the counting of the electoral votes on January 6 in violation of the Electoral Count Act."  Opp. at | amendment should prevail.  D's Ex. F, p 111:21-22; *see also* D's Ex. N (Eastman email to Jacob at 1:33 pm on Jan. 6: "You're sticking with minor procedural statutes while the Constitution is being shredded"). |
| 31. "Former Fourth Circuit Judge Michael Luttig—for whom Plaintiff had previously worked as a law clerk—described Plaintiff's view of the Vice President's authority as 'incorrect at every turn.'"  Opp. at 13 | Plaintiff has responded at length to this tweet.  *See* John C. Eastman, *Constitutional Statesmanship*, Claremont Review of Books (Fall 2021).[7] |
| 32. "Evidence obtained by the Select Committee to date indicates that President Trump's White House Counsel confronted Plaintiff before the rally, and rejected Plaintiff's advice to Mr. Trump."  Opp. at 13 | The Committee provides no foundation or citation for this claim. |
| 33. "urging the Vice President to take illegal action and refuse to count electoral votes."  Opp. at 14.<br><br>"There is no genuine question that the President and Plaintiff *attempted* to accomplish this specific illegal result."  Opp. at 42. | The email exchange cited by the Committee does not support the claim that Eastman urged the Vice President to "refuse to count electoral votes." Rather, it repeatedly urges delay and sending the matter back to the States. *See* D's Ex. N (Eastman email to Jacob at 9:32 pm on Jan. 5, forwarding Pennsylvania Legislators Letter and stating: "This is huge, as it now looks like PA Legislature will vote to recertify its electors if Vice President Pence implements the plan we discussed," i.e., "send it back" to the States); *id.* (Eastman email to Jacob at 6:09 pm on Jan. 6, stating: "With all due respect, the VP's statement today claimed the most aggressive position that had been discussed and rejected. |

---

[7] Available at https://claremontreviewofbooks.com/constitutional-statesmanship/.

**PLAINTIFF'S STATEMENT OF DISPUTED FACTS – PAGE 14**

| | |
|---|---|
| | 'Some believe that as Vice President, I should be able to accept or reject electoral votes unilaterally.'  We had given him a much more limited option, merely to adjourn to allow state legislatures to continue their work."); *id.*, Eastman email to Jacob at 9:44 pm MST: "adjourn for 10 days to allow the legislatures to finish their investigations"). |
| 34. "Although Plaintiff produced the requested logs, those logs failed to provide sufficient information to allow the Select Committee to assess the privilege assertions' validity. After several efforts to secure adequate information from Plaintiff, …"  Opp. at 17.<br><br>"Congressional Defendants cannot specifically address documents they have not seen, many of which are scantly described in the privilege logs." Opp. at 36 | Plaintiff provided additional detail in response to Defendants' objections, but declined to provide a level of detail that would itself reveal the substance of the privileged materials. |
| 35.  "That letter identifies the client as "Donald J. Trump for President, Inc." Opp. at 19. | The letter explicitly describes both "Donald J. Trump, in his capacity as candidate for President of the United States, and Donald J. Trump for President, Inc." as "collectively, … the client."  2d Eastman Decl., Ex. A. |
| 36. "According to the University, whenever Plaintiff logged on to Chapman's network during the relevant period he received a "splash screen" message stating: "Use of this computer system constitutes your consent that you're activities on, or information you store in, any part of the system is subject to monitoring and recording by Chapman University or its agents, consistent with the Computer and Acceptable Use Policy without further | It is true that DuMontelle made such a claim, but Eastman disputes that the method he used to access University servers – a laptop and VPN connection – ever produced such a "splash screen." 3d Eastman Decl. at ¶ ??. |

**PLAINTIFF'S STATEMENT OF DISPUTED FACTS – PAGE 15**

| | |
|---|---|
| notice." Decl. of Janine DuMontelle ¶ 6, ECF No. 17-1." Opp. at 26. | |
| 37. "Numerous documents make no reference to any pending litigation and or anticipated litigation for which these materials were prepared." Opp. at 31 | Plaintiff provided that additional detail in his response to Defendants' objections. |
| 38. "it would pervert the purpose of the work-product doctrine to allow Plaintiff to claim protection for his advice aimed at—to put it bluntly— overturning a democratic election." Opp. at 32.<br><br>"The apparent objective of these efforts was to overturn the results of the 2020 presidential election and declare Donald Trump the winner." Opp. at 44 | Plaintiff has stated publicly on many occasions that his advice was designed to prevent illegality and fraud from deciding a "democratic election." Plaintiff's publicly released memos specifically provide for the possibility that, should the legislatures determine that any illegality and fraud was not sufficient to alter the results, then "Biden wins." |
| 39. "Plaintiff drafted legal memoranda outlining several possible ways to ensure that Donald Trump would be named the winner of the 2020 election." Opp. at 46. | As stated above, the memos do not on their face "ensure" President's Trump's reelection. The memos outline various scenarios, some resulting in a Trump victory, some resulting in a Biden victory. |
| 40. "the Trump campaign ran two advertisements on Facebook with the same selectively edited footage and the same claim that the video showed "suitcases of ballots added in secret in Georgia." On December 27 and 31, 2020, Acting Deputy Attorney General Donoghue again debunked this claim directly to the President." | Defendants have not submitted sufficient evidence for this Court to find as a matter of law that no fraud existed in the 2020 Georgia Presidential election, let alone to impute such knowledge to President Trump in the January 4-7, 2021 timeframe.<br><br>Defendants have also failed to account for publicly available evidence contrary to their view. A subsequent forensic audit claimed more than 4,255 duplicate ballots were double scanned and counted in Fulton County, Georgia. 3rd Amendment to Petition ¶ 222, *Favorito v. Wan*, No. 2020CV-343938 (Fulton Cnty Super. Ct., filed July 2, |

**PLAINTIFF'S STATEMENT OF DISPUTED FACTS – PAGE 16**

| | 2021)[8]; The case was dismissed based on lack of standing. |

March 7, 2022                    Respectfully submitted,

/s/*Anthony T. Caso*
Anthony T. Caso (Cal. Bar #88561)
CONSTITUTIONAL COUNSEL GROUP
174 W Lincoln Ave # 620
Anaheim, CA 92805-2901
Phone: 916-601-1916
Fax: 916-307-5164
Email: atcaso@ccg1776.com

*/s/ Charles Burnham*
Charles Burnham (D.C. Bar # 1003464)
Burnham & Gorokhov PLLC
1424 K Street NW, Suite 500
Washington, D.C. 20005
Email: charles@burnhamgorokhov.com
Telephone: (202) 386-6920

*Counsel for Plaintiff*

---

[8] Available at https://voterga.org/wp-content/uploads/2021/07/amended-complaint-for-audit-errors.pdf.

**PLAINTIFF'S STATEMENT OF DISPUTED FACTS – PAGE 17**

**CERTIFICATE OF SERVICE**

I have served this filing on all counsel through the Court's ECF system.

Respectfully submitted,

/s/ Charles Burnham
Charles Burnham
BURNHAM & GOROKHOV PLLC
1424 K Street NW, Suite 500
Washington, D.C. 20005
Telephone: (202) 386-6920
Email: charles@burnhamgorokhov.com

**PLAINTIFF'S STATEMENT OF DISPUTED FACTS – PAGE 18**