OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
5140 O'Neill House Office Building
Washington, D.C. 20515

SHER TREMONTE LLP
90 Broad Street, 23rd Floor
New York, New York 10004

ARNOLD & PORTER
601 Massachusetts Ave, NW
Washington, D.C. 20001

Counsel for the Congressional Defendants

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SOUTHERN DIVISION

| | |
|---|---|
| JOHN C. EASTMAN,<br><br>　　　Plaintiff,<br><br>vs.<br><br>BENNIE G. THOMPSON, *et al.*,<br><br>　　　Defendants. | Case No. 8:22-cv-00099-DOC-DFM |

# Exhibit N

| | |
|---|---|
| Message | |
| **From**: | John Eastman [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=192D43D8DB2949C9ADFA27C5CBFD02A1-JOEA4895] |
| **Sent**: | 12/4/2020 9:25:56 PM |
| **To**: | PIISC [PIISC@pahousegop.com] |
| **Subject**: | RE: Your Georgia testimony |
| **Attachments**: | Plenary Authority Resolution - JCE.docx |

Nice job. I've made a few suggestions in the attached redline.

One big question, though. Do you want to only go half way, and require another resolution to actual choose a slate of electors? Or should you do it all in one resolution? I don't know the dynamic of your Legislature, so can't answer that. But my intuition is that it would be better to do what you need to do in one fell swoop.

I did not watch the hearings that were held, but I suspect they contained ample evidence of sufficient anomalies and illegal votes to have turned the election from Trump to Biden. If that is the case, you could add another section of factual findings based on the evidence presented at that hearing, and then adopt a resolution that has the Legislature simply affirming what appears to have been the result of the popular vote untainted by the illegal votes.

For example, depending on how many ballots were counted that were received after the statutory deadline (say 10,000 for example's purpose), those 10,000 votes need to be discarded, and you can take the absentee ballot ratio for each candidate in the counties were late-received ballots were illegally counted and deduct the pro-rated amount from each candidate's total.

For the signature verification violation (and perhaps the banning of observers), you could take the difference between the 4% historical rejection rate and the .34% rejection rate done under the illegal procedures, and similarly discount each candidates' totals by a prorated amount based on the absentee percentage those candidates otherwise received.

Then, having done that math, you'd be left with a significant Trump lead that would bolster the argument for the Legislature adopting a slate of Trump electors – perfectly within your authority to do anyway, but now bolstered by the untainted popular vote. That would help provide some cover.

I would also include after paragraph 3 a specific legislative determination that the slate of electors certified by the governor under the illegally-conducted election are also null and void.

Hope this helps.

John

**From:** PIISC < PIISC @pahousegop.com>
**Sent:** Friday, December 4, 2020 7:52 PM
**To:** John Eastman <John.Eastman@colorado.edu>
**Subject:** Re: Your Georgia testimony

Thank you so much, sir!

Attached is a resolution I drafted to reflect that premise. If you would kindly review and provide constructive criticism, it would be greatly appreciated as I am not formally schooled in the law.



**From:** John Eastman <John.Eastman@colorado.edu>
**Sent:** Friday, December 4, 2020 9:22:09 PM
**To:** PIISC < PIISC @pahousegop.com>
**Subject:** RE: Your Georgia testimony

You're summary is spot on.

I have not been able to locate the old resolutions from Florida, which I helped draft. But here's a NY Times article about them. https://www.nytimes.com/2000/12/12/us/contesting-vote-legislature-committees-approve-resolutions-allowing-florida.html

It appears that they were done as a joint resolution—i.e., a legislative resolution requiring approval by each house of the legislature but not the signature of the Governor. I believe that is consistent with the plenary authority provided by Article II, and also consistent with the role the legislature plays (alone, without the governor) in deciding whether or not to ratify a U.S. Constitutional amendment.

What happened in Florida is that both the House and Senate had drafted identical resolutions, and those had passed out of committee on a party-line vote. Floor votes in both chambers were scheduled for the Tuesday and Wednesday following, but the Supreme Court's decision in *Bush v. Gore* mooted the issue.

Hope that helps. Feel free to send any follow-up questions you have, or call me at PIISC .

John

P.S. I do not think the letter to members of your state congressional delegation was helpful. Our side can object to the slate of electors all they want. An objection, signed in writing by at least 1 member of the House and 1 member of the Senate, results in the two houses breaking into their separate chambers to resolve the objection. ONLY IF *both houses* then agree to the objection is the slate deemed invalid. If the House doesn't agree to the objection, as is almost certain (the vote here being by majority rather than by state), then the objection is not sustained and the slate is counted. See 3 U.S.C. § 15. So don't let your colleagues rest on that letter.

**From:** PIISC < PIISC @pahousegop.com>
**Sent:** Friday, December 4, 2020 6:14 PM
**To:** John Eastman <John.Eastman@colorado.edu>
**Subject:** Your Georgia testimony

Professor Eastman-

I found your testimony before the Georgia Senate to be compelling. Here in Pennsylvania, numerous other frustrated colleagues and I are searching for legislative solutions to our current national predicament.

Forgive me, as I am not an attorney, but my takeaway from your testimony was the following. Please review and let me know if it is an accurate assessment of what you said during your presentation and the Q & A portion.

Because the US Constitution vests the authority to create election law in the state legislatures, and because Pennsylvania's judicial and executive branches issued decisions and guidance which contravene the election

law the Pennsylvania state legislature created, resulting in an unlawful election, the state legislature can exercise its plenary authority to appoint presidential electors, regardless of restraints existing within Pennsylvania's constitution and statutes, because of the supremacy clause of the US Constitution and because the act of appointing presidential electors is a function of the US Constitution.

I am working on a legislative instrument based on this premise, after reading through *McPherson v. Blacker*. If make takeaway is inaccurate or not precise enough, I would greatly appreciate your input.

Further, it was my understanding that you stated that the FL legislature during Bush v. Gore in 2000 was based on matching simple resolutions in the FL House and Senate, as opposed to a joint resolution or a concurrent resolution. Is that accurate?

Thank you so very much for your time and consideration. I can be reached at [PIISC] if you believe a verbal discussion would be better suited to review these questions I have.

Respectfully,

**PIISC**

PIISC@pahousegop.com
www.PIISC.com

*The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient is prohibited. If you received this information in error, please contact the sender and delete the message and material from all computers.*

*The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient is prohibited. If you received this information in error, please contact the sender and delete the message and material from all computers.*

*The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient is prohibited. If you received this information in error, please contact the sender and delete the message and material from all computers.*

A RESOLUTION

Declaring and affirming plenary authority in appointing presidential electors.

WHEREAS, Article I, Section 4, Clause 1 of the United States Constitution empowers state legislatures, including the General Assembly of the Commonwealth of Pennsylvania, to prescribe the "Times, Places, and Manner" of conducting elections; and

WHEREAS, Article II, Section 1, Clause 2 of the United States Constitution empowers state legislatures, including the General Assembly of the Commonwealth of Pennsylvania, to direct the manner of appointing electors for President and Vice President of the United States; and

WHEREAS, the General Assembly of the Commonwealth of Pennsylvania has exercised its authority to establish election administration procedures for the Commonwealth, known as the Pennsylvania Election Code; and

WHEREAS, the Pennsylvania Election Code requires all mail-in ballots to be received by eight o'clock P.M. on the day of the election; and

WHEREAS, the Pennsylvania Election Code requires election officials at polling places to authenticate the signatures of in-person voters; and

WHEREAS, the Pennsylvania Election Code requires that county boards of elections shall not meet to conduct a pre-canvass of all absentee and mail-in ballots until seven o'clock A.M. on Election Day, during which time defects on mail-in ballots would be identified; and

WHEREAS, the Pennsylvania Election Code prohibits the counting of defective absentee or mail-in ballots; and

WHEREAS, the Pennsylvania Election Code authorizes "watchers," selected by candidates and political parties, to observe the process of canvassing absentee and mail-in ballots; and

WHEREAS, the Commonwealth conducted an election on November 3, 2020 for federal offices, including selecting electors for President and Vice President of the United States; and

WHEREAS, on September 17, 2020, less than seven weeks before the November 3, 2020 election, the Supreme Court of the Commonwealth of Pennsylvania unlawfully and unilaterally extended the deadline for mail-in ballots to be received, mandated that ballots mailed without a postmark would be presumed to be received timely, and could be accepted without a verified voter signature; and

WHEREAS, on October 23, 2020, less than two weeks before the November 3, 2020 election and upon a petition from the Secretary of the Commonwealth, the Supreme Court of the Commonwealth of Pennsylvania ruled that county Boards of Election need not authenticate signatures for mail-in ballots, thereby treating in-person and mail-in voters dissimilarly and eliminating a critical safeguard against potential election crime; and

WHEREAS, on November 2, 2020, the night before the November 3, 2020 election and prior to the prescribed time for pre-canvassing mail-in ballots, the office of the Secretary of the Commonwealth encouraged certain counties to notify party and candidate representatives of mail-in voters whose ballots contained defects; and

WHEREAS, heavily Democrat counties permitted mail-in voters to cure ballot defects while heavily Republican counties followed the law and invalidated defective ballots; and

WHEREAS, in certain counties in the Commonwealth, watchers were not permitted to meaningfully observe the pre-canvassing and canvassing activities relating to absentee and mail-in ballots; and

WHEREAS, officials in the Executive and Judicial branches of the Commonwealth infringed upon the General Assembly's authority under the United States Constitution by issuing decisions and providing guidance which contravened, frustrated and substantially modified the express provisions of the Pennsylvania Election Code; and

WHEREAS, election officials in certain counties of the Commonwealth acted upon the unlawful decisions and guidance of the Executive and Judicial branches of the Commonwealth; and

WHEREAS, election officials in certain counties of the Commonwealth took further actions in contravention of the Pennsylvania Election Code; and

WHEREAS, in *McPherson v. Blacker* 146 U.S. 1 (1892), the Supreme Court of United States examined Article II, Section 1, Clause 2 of the United States Constitution and held "that from the formation of the government until now the practical construction of the clause has conceded plenary power to the state legislatures in the matter of the appointment of electors;" and

~~WHEREAS, in *McPherson v. Blacker* the Supreme Court of United States also held "that from the formation of the government until now the practical construction of the clause has conceded plenary power to the state legislatures in the matter of the appointment of electors;" and~~

WHEREAS, in *McPherson v. Blacker* the Supreme Court of United States further held that "The appointment of these electors is thus placed absolutely and wholly with the legislatures of the several States. They may be chosen by the legislature, or the legislature may provide that they shall be elected by the people of the State at large, or in districts, as are members of Congress, which was the case formerly in many States; and it is, no doubt, competent for the legislature to authorize the governor, or the Supreme Court of the State, or any other agent of its will, to appoint these electors. This power is conferred upon the legislatures of the States by the Constitution of the United States, and cannot be taken from them or modified by their State constitutions any more than can their power to elect Senators of the United States. Whatever provisions may be made by statute, or by the state constitution, to choose electors by the people, there is no doubt of the right of the legislature to resume the power at any time, for it can neither be taken away nor abdicated. (Senate Rep. 1st Sess. 43 Cong. No. 395)"; and

WHEREAS, Article VI, Section 2, Clause 2 of the United States Constitution states "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding;"

WHEREAS, in *Bush v. Gore* the Supreme Court of the United States held that "When the state legislature vests the right to vote for President in its people, the right to vote *as the legislature has prescribed* is fundamental." *Bush v. Gore*, 531 U.S. 98, 104 (2000) (emphasis added); and

WHEREAS, 3 U.S.C. §2. states "Whenever any State has held an election for the purpose of choosing electors, and has failed to make a choice on the day prescribed by law, the electors may be appointed on a subsequent day in such a manner as the legislature of such State may direct;" and

THEREFORE, be it RESOLVED that the Pennsylvania General Assembly —

1. Declares the aforementioned to be findings of fact; and

2. Condemns all unlawful infringement on the General Assembly's authority pursuant to the United States Constitution to regulate the "Times, Places, and Manner" of conducting elections and the "manner of appointing electors for President and Vice President of the United States"; and

3. Declares the November 3, 2020 election of presidential electors to be unlawful, and the results thereof null and void; and

4. Declares that the Commonwealth of Pennsylvania has failed to make a choice on the day prescribed by law; and

5. Declares its intent to exercise plenary authority in appointing presidential electors as provided by Article II, Section 1, Clause 2 of the United States Constitution ; and

6. Declares the right to pursue the aforementioned under the authority and protection of Article VI, Section 2, Clause 2 of the United States.