OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
5140 O'Neill House Office Building
Washington, D.C. 20515

SHER TREMONTE LLP
90 Broad Street, 23rd Floor
New York, New York 10004

ARNOLD & PORTER
601 Massachusetts Ave, NW
Washington, D.C. 20001

Counsel for the Congressional Defendants

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SOUTHERN DIVISION

| | |
|---|---|
| JOHN C. EASTMAN, <br><br> Plaintiff, <br><br> vs. <br><br> BENNIE G. THOMPSON, *et al.*, <br><br> Defendants. | Case No. 8:22-cv-00099-DOC-DFM |

# Exhibit O

| | |
|---|---|
| Message | |
| **From:** | PIISC [PIISC @pahousegop.com] |
| **Sent:** | 12/4/2020 9:46:19 PM |
| **To:** | John Eastman [John.Eastman@colorado.edu] |
| **Subject:** | Re: Your Georgia testimony |

Thanks so much.

Honestly, the Trump legal team was not exactly stellar at PA's hearing, failed to provide the affidavits of their witnesses, and made a glaring error by purporting that more ballots had been returned than mailed out.

It is for this reason that I so latched onto your comments that actual fraud is irrelevant when the election itself is unlawful.

I will take a look at this in the morning. Thank you so very much!

PIISC

---

**From:** John Eastman <John.Eastman@colorado.edu>
**Sent:** Friday, December 4, 2020 11:25:56 PM
**To:** PIISC < PIISC @pahousegop.com>
**Subject:** RE: Your Georgia testimony

Nice job. I've made a few suggestions in the attached redline.

One big question, though. Do you want to only go half way, and require another resolution to actual choose a slate of electors? Or should you do it all in one resolution? I don't know the dynamic of your Legislature, so can't answer that. But my intuition is that it would be better to do what you need to do in one fell swoop.

I did not watch the hearings that were held, but I suspect they contained ample evidence of sufficient anomalies and illegal votes to have turned the election from Trump to Biden. If that is the case, you could add another section of factual findings based on the evidence presented at that hearing, and then adopt a resolution that has the Legislature simply affirming what appears to have been the result of the popular vote untainted by the illegal votes.

For example, depending on how many ballots were counted that were received after the statutory deadline (say 10,000 for example's purpose), those 10,000 votes need to be discarded, and you can take the absentee ballot ratio for each candidate in the counties were late-received ballots were illegally counted and deduct the pro-rated amount from each candidate's total.

For the signature verification violation (and perhaps the banning of observers), you could take the difference between the 4% historical rejection rate and the .34% rejection rate done under the illegal procedures, and similarly discount each candidates' totals by a prorated amount based on the absentee percentage those candidates otherwise received.

Then, having done that math, you'd be left with a significant Trump lead that would bolster the argument for the Legislature adopting a slate of Trump electors – perfectly within your authority to do anyway, but now bolstered by the untainted popular vote. That would help provide some cover.

CU-CORA-001086

I would also include after paragraph 3 a specific legislative determination that the slate of electors certified by the governor under the illegally-conducted election are also null and void.

Hope this helps.

John

---

**From:** PIISC < PIISC @pahousegop.com>
**Sent:** Friday, December 4, 2020 7:52 PM
**To:** John Eastman <John.Eastman@colorado.edu>
**Subject:** Re: Your Georgia testimony

Thank you so much, sir!

Attached is a resolution I drafted to reflect that premise. If you would kindly review and provide constructive criticism, it would be greatly appreciated as I am not formally schooled in the law.

PIISC

---

**From:** John Eastman <John.Eastman@colorado.edu>
**Sent:** Friday, December 4, 2020 9:22:09 PM
**To:** PIISC < PIISC @pahousegop.com>
**Subject:** RE: Your Georgia testimony

You're summary is spot on.

I have not been able to locate the old resolutions from Florida, which I helped draft. But here's a NY Times article about them. https://www.nytimes.com/2000/12/12/us/contesting-vote-legislature-committees-approve-resolutions-allowing-florida.html

It appears that they were done as a joint resolution—i.e., a legislative resolution requiring approval by each house of the legislature but not the signature of the Governor. I believe that is consistent with the plenary authority provided by Article II, and also consistent with the role the legislature plays (alone, without the governor) in deciding whether or not to ratify a U.S. Constitutional amendment.

What happened in Florida is that both the House and Senate had drafted identical resolutions, and those had passed out of committee on a party-line vote. Floor votes in both chambers were scheduled for the Tuesday and Wednesday following, but the Supreme Court's decision in *Bush v. Gore* mooted the issue.

Hope that helps. Feel free to send any follow-up questions you have, or call me at PIISC.

John

P.S. I do not think the letter to members of your state congressional delegation was helpful. Our side can object to the slate of electors all they want. An objection, signed in writing by at least 1 member of the House and 1 member of the Senate, results in the two houses breaking into their separate chambers to resolve the objection. ONLY IF *both houses* then agree to the objection is the slate deemed invalid. If the House doesn't agree to the objection, as is almost certain (the vote here being by majority rather than by state), then the

objection is not sustained and the slate is counted. See 3 U.S.C. § 15. So don't let your colleagues rest on that letter.

**From:** PIISC < PIISC @pahousegop.com>
**Sent:** Friday, December 4, 2020 6:14 PM
**To:** John Eastman <John.Eastman@colorado.edu>
**Subject:** Your Georgia testimony

Professor Eastman-

I found your testimony before the Georgia Senate to be compelling. Here in Pennsylvania, numerous other frustrated colleagues and I are searching for legislative solutions to our current national predicament.

Forgive me, as I am not an attorney, but my takeaway from your testimony was the following. Please review and let me know if it is an accurate assessment of what you said during your presentation and the Q & A portion.

Because the US Constitution vests the authority to create election law in the state legislatures, and because Pennsylvania's judicial and executive branches issued decisions and guidance which contravene the election law the Pennsylvania state legislature created, resulting in an unlawful election, the state legislature can exercise its plenary authority to appoint presidential electors, regardless of restraints existing within Pennsylvania's constitution and statutes, because of the supremacy clause of the US Constitution and because the act of appointing presidential electors is a function of the US Constitution.

I am working on a legislative instrument based on this premise, after reading through *McPherson v. Blacker*. If make takeaway is inaccurate or not precise enough, I would greatly appreciate your input.

Further, it was my understanding that you stated that the FL legislature during Bush v. Gore in 2000 was based on matching simple resolutions in the FL House and Senate, as opposed to a joint resolution or a concurrent resolution. Is that accurate?

Thank you so very much for your time and consideration. I can be reached at PIISC if you believe a verbal discussion would be better suited to review these questions I have.

Respectfully,

PIISC

PIISC @pahousegop.com
www. PIISC .com

The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient is prohibited. If you received this information in error, please contact the sender and delete the message and material from all computers.

*The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient is prohibited. If you received this information in error, please contact the sender and delete the message and material from all computers.*

*The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient is prohibited. If you received this information in error, please contact the sender and delete the message and material from all computers.*

*The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient is prohibited. If you received this information in error, please contact the sender and delete the message and material from all computers.*

CU-CORA-001089