# Exhibit A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>GARRET MILLER,<br><br>      *Defendant*. | Criminal Action No. 1:21-cr-00119 (CJN) |

**MEMORANDUM OPINION**

In Count Three of a twelve-count Second Superseding Indictment, the United States charged Garret Miller with violating 18 U.S.C. § 1512(c)(2). *See* Second Superseding Indictment ("Indictment"), ECF No. 61 at 2–3. On March 7, 2022, the Court granted Miller's Motion to Dismiss, rejecting the government's broad interpretation of that statute. *United States v. Miller*, ___ F. Supp. 3d ___, 2022 WL 823070 (D.D.C. Mar. 7, 2022).

The government has since moved for reconsideration, arguing that the Court's prior interpretation regarding the scope of § 1512(c)(2) was incorrect. *See generally* Mot. for Reconsideration ("Mot."), ECF No. 75. In the alternative, the government contends for the first time that, even if the Court's statutory interpretation is correct, dismissal was not warranted because the Indictment provides Miller with sufficient notice of how he allegedly violated the statute under the Court's interpretation. *See generally id.* The Court disagrees on both scores.

**I. RECONSIDERATION OF THE COURT'S PRIOR DECISION ON THE SCOPE OF § 1512(C)(2) IS NOT WARRANTED**

The government argues that the Court should reconsider its prior decision because the government did not present the issue of "the degree of ambiguity required to trigger the rule of lenity" in its briefs opposing Miller's motion to dismiss. *See* Mot. at 8. But the parties did join

1

issue on this specific question, *see* Opp. to Mot. to Dismiss, ECF No. 35, at 12 n.2 (discussing the degree of ambiguity required to trigger the rule of lenity); *see also* Supp. Br. in Resp. to Def.'s Second Supp., ECF No. 63-1 at 38 (same), and the Court was well aware of and considered the appropriate standard for the application of lenity, *see Miller*, 2022 WL 823070, at *5. The government has pointed to no intervening change in law. Because a reconsideration motion is "not simply an opportunity to reargue facts and theories upon which a court has already ruled," the Court concludes that the government's lenity argument is not a basis for reconsideration. *United States v. Hassanshahi*, 145 F. Supp. 3d 75, 80–81 (D.D.C. 2015) (internal quotation marks omitted).

The government also contends that reconsideration is warranted because the Court erred in its interpretation of § 1512(c)(2) and because its decision conflicts with the decisions of other Judges in the District. *See generally* Reply, ECF No. 84. The Court has again carefully considered the government's arguments—presented here and in other cases pending before the Court—as to why the government's broad reading of § 1512(c)(2) is the correct one. The Court has also carefully considered the opinions from other Judges in the District on the issue.[1] The Court is not

---

[1] The Court notes that those decisions reach the same conclusion but for different reasons. For example, some opinions do not consider the relevance of the word "otherwise" in the statute at all, *see United States v. McHugh*, ("*McHugh I*"), 2022 WL 296304, at *12 (D.D.C. Feb. 1, 2022) (omitting "otherwise" even from its quotation of the statute); others mention the word but essentially omit any serious discussion of it, *see United States v. Nordean*, 2021 WL 6134595, at *6-7 (D.D.C. Dec. 28, 2021); and others suggest that it presents the key interpretive question, *United States v. McHugh*, ("*McHugh II*"), 2022 WL 1302880, at *4 (D.D.C. May 2, 2022) (concluding "the meaning of 'otherwise' is central to the meaning of § 1512(c)(2)"). Other decisions appear to have concluded that § 1512(c)(1) acts as something of a carveout from § 1512(c)(2)'s otherwise broad terms, *see United States v. Reffit*, 2022 WL 1404247, at *8 (D.D.C. May 4, 2022), *see also United States v. Sandlin*, 2021 WL 5865006, at *5 (D.D.C. Dec. 10, 2021); *United States v. Caldwell*, 2021 WL 6062718, at *12 (D.D.C. Dec. 20, 2021), *reconsideration denied*, 2022 WL 203456 (D.D.C. Jan. 24, 2022); *United States v. Mostofsky*, 2021 WL 6049891, at *11 (D.D.C. Dec. 21, 2021); *United States v. Bingert*, 2022 WL 1659163, at *8–*9 (D.D.C. May 25, 2022), while others interpret "otherwise" to require a link between the subsections that is

persuaded, either by the government's arguments or those other decisions, that the statute is so clear that the rule of lenity is inapplicable. The Court therefore stands on its previous decision concerning the scope of § 1512(c)(2).

## II. DISMISSAL OF THE INDICTMENT IS NOT PREMATURE

The government argues in the alternative that, even under the Court's interpretation of § 1512(c)(2), dismissal was premature because the Indictment satisfies Federal Rule of Criminal Procedure 7(c)(1) and is otherwise constitutional. *See* Mot. at 21–24. The government did not make this argument in its initial opposition to Miller's Motion to Dismiss. *See generally* Mem. in Opp., ECF No. 63-1. But even if the argument has not been forfeited—Miller, for his part, has not argued that the government forfeited this argument—it falls short.

Count Three of the Second Superseding Indictment states:

### COUNT THREE

On or about January 6, 2021, within the District of Columbia and elsewhere, **GARRET MILLER**, attempted to, and did, corruptly obstruct, influence, and impede an official proceeding, that is, a proceeding before Congress, specifically, Congress's certification of the Electoral College vote as set out in the Twelfth Amendment of the Constitution of the United States and 3 U.S.C. §§ 15–18.

(**Obstruction of an Official Proceeding and Aiding and Abetting**, in violation of Title 18, United States Code, Sections 1512(c)(2) and 2)

Indictment at 2–3 (emphasis original). Count Three contains no other allegations, is not preceded by a general facts section, and does not cross-reference any other Counts.

The government contends that the Indictment is nonetheless sufficient, as it "echo[es] the operative statutory text while also specifying the time and place of the offense." Mot. at 21

---

provided through the requirement that the illegal conduct be targeted at an "official proceeding," *see United States v. Montgomery*, 2021 WL 6134591, at *12 (D.D.C. Dec. 28, 2021); *United States v. Grider*, 2022 WL 392307, at *5–6 (D.D.C. Feb. 9, 2022).

3

(quoting *United States v. Williamson*, 903 F.3d 124, 140 (D.C. Cir. 2018)). The government argues that Count Three should be construed as encompassing both the government's interpretation of the statute and the Court's. Put differently, the government argues that because Count Three echoes the statutory text, it is wholly consistent with the Court's interpretation of the statute (and, presumably, would be consistent with essentially any interpretation).[2]

Miller disagrees. He argues that an indictment must contain a "definite written statement of the essential facts constituting the offense charged." Def.'s Resp., ECF No. 80 at 22 (quoting Fed. R. Crim. P. 7(c)(1)) (emphasis omitted). Miller contends that nothing in Count Three (or in the Indictment more generally) alleges or even implies that he took some action with respect to a document, record, or other object, which is required under the Court's interpretation. *See id.* at 22–24; *Miller*, 2022 WL 823070, at *15. Miller also notes that the Indictment does not include the facts essential to the charge, thus robbing him of his opportunity to prepare a proper defense. *See* Def.'s Resp. at 23.

The Court agrees with Miller.

An indictment must contain the essential facts constituting the charged offense. Chief Justice John Marshall explained long ago (albeit in the context of an admiralty proceeding to enforce a forfeiture judgment against a schooner and her cargo) that:

> It is not controverted that in all proceedings in the Courts of common law, either against the person or the thing for penalties or forfeitures, the allegation that the act charged was committed in violation of law, or of the provisions of a particular statute will not justify condemnation, unless, independent of this allegation, a case be stated which shows that the law has been violated. The reference to the statute may direct the attention of the Court, and of the accused, to the particular statute by which the prosecution is to be sustained, but forms no part of the description of the offence. The importance of this principle to a fair administration of justice, to that

---

[2] If the government's argument were correct, it is not apparent why any Judge needed to address what conduct § 1512(c)(2) covers at the motion-to-dismiss stage.

> certainty introduced and demanded by the free genius of our institutions in all prosecutions for offences against the laws, is too apparent to require elucidation, and the principle itself is too familiar not to suggest itself to every gentleman of the profession.

*The Hoppet*, 11 U.S. (7 Cranch) 389, 393 (1813); *see also* Joseph Story, *Commentaries on the Constitution of the United States* § 1779 (1833) ("[T]he indictment must charge the time, and place, and nature, and circumstances, of the offense, with clearness and certainty; so that the party may have full notice of the charge, and be able to make his defense with all reasonable knowledge and ability.").

Courts soon applied this principle in criminal proceedings. *See* Caleb Nelson, *The Constitutionality of Civil Forfeiture*, 125 YALE L.J. 2446, 2500–01 (2016) (citing *The Hoppet* and noting that the "analogy between penal actions and criminal prosecutions may also have led judges to require more specificity in pleadings than standard civil practice would have demanded"); Note, *Indictment Sufficiency*, 70 COLUM. L. REV. 876, 884 (1970) (describing *The Hoppet* as the origin of the rule that a valid criminal indictment must include a "sufficient description of [the essential elements] to inform [a] defendant as to the nature and cause of his accusation"). As the Supreme Court stated in 1895, "the true test is, not whether [the criminal indictment] might possibly have been made more certain, but whether it contains every element of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet." *Cochran v. United States*, 157 U.S. 286, 290 (1895); *see also United States v. Cruikshank*, 92 U.S. 542, 558 (1875) ("A crime is made up of acts and intent; and these must be set forth in the indictment, with reasonable particularity of time, place, and circumstances."); *id.* at 559 ("[T]he indictment should state the particulars, to inform the court as well as the accused. It must be made to appear—that is to say, appear from the indictment, without going further—that the acts charged will, if proved, support a conviction for the offence alleged.").

5

This standard is still applicable today. As then-District Court Judge Jackson recently explained:

> It is axiomatic that "[a] crime is made up of acts and intent; and these must be set forth in the indictment, with reasonable particularity of time, place, and circumstances" if the charging document is to comport with the Constitution. *United States v. Cruikshank*, 92 U.S. 542, 558 (1875); *see also* U.S. Const. Amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation [against him.]"). To satisfy the protections that the Sixth Amendment guarantees, "*facts* are to be stated, not conclusions of law alone." *Cruikshank*, 92 U.S. at 558 (emphasis added). In other words, "[t]he accusation must be legally sufficient, i.e., it must assert facts which in law amount to an offense and which, if proved, would establish prima facie the accused's commission of that offense." *United States v. Silverman*, 745 F.2d 1386, 1392 (11th Cir. 1984) (citation omitted).
>
> "The requirement that an indictment contain a few basic factual allegations accords defendants adequate notice of the charges against them and assures them that their prosecution will proceed on the basis of facts presented to the grand jury." *United States v. Cecil*, 608 F.2d 1294, 1297 (9th Cir. 1979). "The . . . generally applicable rule is that the indictment may use the language of the statute, but that language must be supplemented with enough detail to apprise the accused of the particular offense with which he is charged." [*United States v.*] *Conlon*, 628 F.2d [150,] 155 [(D.C. Cir. 1980)]. Furthermore, and importantly for present purposes, "[i]t is an elementary principle of criminal pleading[ ] that where the definition of an offen[s]e . . . includes generic terms, it is not sufficient that the indictment shall charge the offen[s]e in the same generic terms as in the definition; but it must state the species[ ]—it must descend to particulars." *United States v. Thomas*, 444 F.2d 919, 921 (D.C. Cir. 1971) (first alteration in original) (quoting *Cruikshank*, 92 U.S. at 558). Thus, an indictment that mirrors the exact language of a criminal statute may nevertheless be dismissed as constitutionally deficient if it is "not framed to apprise the defendant 'with reasonable certainty[ ] of the nature of the accusation against him[.]'" [*United States v.*] *Nance*, 533 F.2d [699,] 701 [(D.C. Cir. 1976)] (quoting [*United States v.*] *Simmons*, 96 U.S. [360,] 362 [(1877)]).

*United States v. Hillie*, 227 F. Supp. 3d 57, 71–72 (D.D.C. 2017) (Jackson, K.B., J.) (noncitation alterations in original).

To be sure, in certain circumstances, an indictment that "echoes the operative statutory text while also specifying the time and place of the offense" can be sufficient. *Williamson*, 903 F.3d

6

at 130; *United States v. Resendiz-Ponce*, 549 U.S. 102, 109 (2007); *United States v. Verrusio*, 762 F.3d 1, 13 (D.C. Cir. 2014). But those cases involve criminal statutes that are sufficiently precise such that merely echoing the statutory language in the indictment provides enough specificity to apprise a reasonable defendant of his allegedly unlawful conduct. *See, e.g.*, *Williamson*, 903 F.3d at 130–31 ("[B]y parroting the statutory language and specifying the time and place of the offense and the identity of the threatened officer, the indictment adequately informed Williamson about the charge against him [under 18 U.S.C. § 115(a)(1)] so that he could prepare his defense and protect his double-jeopardy rights."); *Resendiz-Ponce*, 549 U.S. at 107–08 ("[I]t was enough for the indictment in this case to point to the relevant criminal statute [8 U.S.C. § 1326(a)] and allege that '[o]n or about June 1, 2003,' respondent 'attempted to enter the United States of America at or near San Luis in the District of Arizona.'"); *see also Verrusio*, 762 F.3d at 13–14 (approving a much more detailed indictment than mere parroting).

In some circumstances, then, merely echoing the words of a statute and adding the time and location of the alleged offense may be enough. But when a statute is so broad and general that its terms, without more, fail to inform a reasonable person of the essential conduct at issue, merely echoing that language is *not* enough. As the Supreme Court has stated, "[*i*]*t is an elementary principle of criminal pleading, that where the definition of an offence . . . includes generic terms, it is not sufficient that the indictment shall charge the offence in the same generic terms as in the definition; but it must state the species—it must descend to particulars.*" *Cruikshank*, 92 U.S. at 558 (emphasis added). In such cases, "it is not sufficient to set forth the offence in the words of the statute, unless those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished." *United States v. Carll*, 105 U.S. 611, 612 (1881); *see also Hess*, 124 U.S. at 487

7

("Undoubtedly, the language of the statute may be used in the general description of an offense, but it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged."); *Williamson*, 903 F.3d at 131 ("It is true that, while parroting the statutory language is 'often sufficient,' that is not invariably so."). The government seems to realize that parroting the statute will not always suffice. Indeed, the Indictment includes allegations laying out the "official proceeding" at issue here. *See* Indictment at 2–3 (alleging that Miller disrupted "an official proceeding, that is, a proceeding before Congress, specifically, Congress's certification of the Electoral College vote as set out in the Twelfth Amendment of the Constitution of the United States and 3 U.S.C. §§ 15–18").

To be sure, "neither the Constitution, the Federal Rules of Criminal Procedure, nor any other authority suggests that an indictment must put the defendants on notice as to every *means* by which the prosecution hopes to prove that the crime was committed." *United States v. Haldeman*, 559 F.2d 31, 124 (D.C. Cir. 1976) (emphasis added). And the Federal Rules "were designed to eliminate technicalities in criminal pleading and are to be construed to secure simplicity in procedure." *United States v. Debrow*, 346 U.S. 374, 376 (1953). But an indictment still must include allegations of fact sufficient to make a prima facie case of criminal conduct. That rule "retain[s its] full vitality under modern concepts of pleading, and specifically under Rule 7(c) of the Federal Rules of Criminal Procedure." *Russell*, 369 U.S. at 763.

In the specific context of this statute, under the government's interpretation, just about any *actus reus* could satisfy the statute. *See, e.g.*, Mot. at 10–11; *see also Caldwell*, 2021 WL 6062718, at *13 (noting that "a person outside the Capitol building protesting legislation while it is under consideration by a congressional committee," or a "citizen who emails her congresswoman to urge

8

her to vote against a judicial nominee" could fall under a broad reading of the statute, but stating without explanation that "no one would seriously contend that such [ ] act[s] violate[ ] section 1512(c)(2)"). Indeed, absent any limiting context, the words "obstruct, influence, and impede" provide essentially no limit on what criminal conduct might be at issue. *See Miller*, 2022 WL 823070, at \*9; *Sandlin*, 2021 WL 5865006, at \*5; *see also Caldwell*, 2021 WL 6062718, at \*13 (explaining that "[t]he terms 'obstruct,' 'impede,' and especially 'influence,' unless meaningfully limited, sweep in wholly innocent and protected First Amendment conduct."). This is true in part because those verbs refer to the *effect* that an action has, not to the *act* itself. *See Sandlin*, 2021 WL 5865006, at \*5. Because many actions (including some constitutionally protected ones) could have the natural and probable effect of at least influencing an official proceeding, those words, without more, provide a defendant little to no guidance as to what conduct is being charged.[3]

---

[3] Other Judges in the District have concluded that the word "corruptly" limits the scope of § 1512(c)(2). *See, e.g.*, *Sandlin*, 2021 WL 5865006, at \*13; Final Jury Instructions, *United States v. Reffitt*, No. 21-cr-32, ECF No. 119, at 25 ("To act 'corruptly,' the defendant must use unlawful means or act with an unlawful purpose, or both."); *Montgomery*, 2021 WL 6134591, at \*21 ("The predominant view among the courts of appeals is that the 'corruptly' standard requires at least an 'improper purpose' and an 'intent to obstruct.'"). But this limitation goes to the *mens rea* required by the statute; it does not limit the types of conduct that are made criminal. *But see* 18 U.S.C. § 1515(b) (defining "corruptly" in § 1505 as "acting with an improper purpose" but specifically "including" only acts with an evidentiary nexus); *United States v. Poindexter*, 951 F.2d 369, 385 (D.C. Cir. 1991) (interpreting "corruptly" in a transitive sense, requiring acts directed towards others). And much like the different opinions on the scope of the statute, *see supra note* 1, while all Judges to have considered the issue have concluded that the statute's use of the term "corruptly" does not render it unconstitutionally vague, those decisions have not landed on a consistent approach. For example, some have suggested that "corruptly" means acting "voluntarily and intentionally to bring about an unlawful result or a lawful result by some unlawful method, with hope or expectation of . . . [a] benefit to oneself or a benefit to another person," *Montgomery*, 2021 WL 6134591 at \*22 n.5 (quoting *Aguilar*, 515 U.S. at 616–17 (Scalia, J., concurring in part and dissenting in part)), while others have suggested it means, at least, acting with "consciousness of wrongdoing." *Bingert*, 2022 WL 1659163, at \*6 (quoting *Arthur Anderson LLP v. United States*, 544 U.S. 696, 706 (2005)).

In any event, the government has not argued that "corruptly" meaningfully clarifies or limits the conduct charged in the Indictment here. Although the Court does not now interpret "corruptly" as

9

As for the Indictment here, it states that Miller "attempted to, and did, corruptly obstruct, influence, and impede an official proceeding." Indictment at 2. The charge provides no further detail as to what conduct by Miller the government (or the grand jury, for that matter) considers the *actus reus*. But that act is an essential element of the crime.[4]

The government responds that Count Three is sufficient because it necessarily encompasses the Court's interpretation of § 1512(c)(2). *See* Mot. at 21–24. The Court disagrees. Absent any additional context or specificity, nothing in Count Three informs Miller of what actions he is alleged to have taken with respect to some document, record, or other object. *See Miller*, 2022 WL 823070, at *15. And looking to the rest of the Indictment, and assuming that Count Three implicitly incorporates its other charges, the government has pointed to no action alleged in the Indictment's four corners that has a reasonable nexus with a document, record, or other object. The Court cannot presume that the grand jury passed judgment on this essential element of the offense. *See United States v. Akinyoyenu*, 199 F. Supp. 3d 106, 109–10 (D.D.C. 2016).

The government offers a fallback argument, contending that the Indictment's reference to a specific official proceeding, which itself involved documents, cures the insufficiency. *See* Reply

---

used in § 1512(c), the Court concludes that the common meanings of "corruptly" are sufficiently capacious so as not to limit or clarify the *actus reus* charged in the Indictment.

[4] Note that the Indictment would be insufficient even under the government's reading of the statute. Indeed, it is perhaps *more* problematic because an even broader set of conduct can be criminal under § 1512(c)(2) on the government's view, thereby providing even less notice to the defendant through language that merely summarizes the statute.

Indictments may cross-reference other counts. Such cross-references could provide detail that mere parroting of general words of a statute do not. For example, under the government's interpretation of § 1512(c)(2), a charge of an indictment under that count could incorporate the factual details provided by other charges. But here there is no such explicit cross-reference, and the Court need not determine whether a charge lacking specificity implicitly cross-references other conduct in the indictment because nothing in this Indictment provides a document nexus.

10

at 10–11. Again, the Court disagrees. The Indictment's reference to the certification of the Electoral College vote is only a reference to the official proceeding in question. It sheds no light on the *actus reus* that Miller is alleged to have taken.

The government also contends that the preferred remedy to a vague indictment is a bill of particulars, not dismissal. *See* Reply at 11–12; Transcript of Hearing of May 4, 2022 in *United States v. Lang*, No. 21-cr-53; *see also* Minute Order of November 19, 2021, *United States v. Reffitt*, No. 21-cr-32 (D.D.C.) (ordering a bill of particulars instead of granting a motion to dismiss when the government advanced multiple theories about how the Defendant violated § 1512(c)(2), none of which were described in the Indictment). But "courts have long held that, while a valid indictment can be clarified through a bill of particulars, *an invalid indictment cannot be saved by one*." *Hillie*, 227 F. Supp. 3d at 81 (emphasis modified); *see also Conlon*, 628 F.2d at 156 ("[I]t is settled that a bill of particulars and a fortiori oral argument cannot cure a defective indictment."); *Nance*, 533 F.2d at 701–02 (same); *Thomas*, 444 F.2d at 922–23 (same). As then-District Judge Jackson explained:

> A subsequent statement by the government in the form of a bill of particulars does not guarantee that the formal charges brought against the defendant adhere to the facts that the grand jury considered. *See Nance*, 533 F.2d at 701 (finding that a bill of particulars did not remedy an indictment that lacked "any allegation whatsoever" on a key element of the offense, because merely reciting the words of the statute gave the government "a free hand to insert the vital part of the indictment without reference to the grand jury"). And "to permit the omission [of a material fact] to be cured by a bill of particulars would be to allow the grand jury to indict with one crime in mind and to allow the U.S. Attorney to prosecute by producing evidence of a different crime"; which would, in essence, "usurp the function of the grand jury . . . and, in many cases, would violate due process by failing to give the accused fair notice of the charge he must meet." *Thomas*, 444 F.2d at 922–23. Therefore, even if the government's subsequent statement might reduce the future risk of double jeopardy, *see, e.g.*, [*United States v.*] *Sanford, Ltd.*, 859 F.Supp.2d [102,] 124 [(D.D.C. 2012)], it cannot "cure" an indictment that fails to provide Defendant with present notice of the charges against him or that potentially thwarts the role

11

> of the grand jury in bringing those charges in the first place, *see Russell*, 369 U.S. at 770 (finding that a bill of particulars cannot cure an imprecise and fatally defective indictment); *see also Gaither*[ *v. United States*], 413 F.2d [1061,] 1067 [(D.C. Cir. 1969)] ("The bill of particulars fully serves the functions of apprising the accused of the charges and protecting him against future jeopardy, but it does not preserve his right to be tried on a charge found by a grand jury.").

*Hillie*, 227 F. Supp. 3d at 81 (Jackson, K.B., J.) (noncitation alterations in original).

In sum, Count Three of the Second Superseding Indictment is far too sparse under any proposed reading of the statute. Miller has a constitutional "right . . . to be informed of the nature and cause of the accusation" against him. U.S. Const. Amend. VI.; *see also* Fed. R. Crim. P. 7(c) ("The indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged[.]"). And allowing the government to correct that violation with a bill of particulars would simply spawn another constitutional problem, because "[n]o person shall be held to answer for a [felony], unless on a presentment or indictment of a Grand Jury." U.S. Const. Amend. V.[5]

\*   \*   \*

For the forgoing reasons, the Court **DENIES** the government's Motion to Reconsider.

DATE: May 27, 2022

CARL J. NICHOLS
United States District Judge

---

[5] The Court observes that some of the January 6 indictments include lengthy fact sections that may even include allegations that provide both an *actus reus* and an adequate nexus to a document, record, or other object. *See, e.g.*, *Caldwell I*, 2021 WL 6062718, at \*13 (D.D.C. Dec. 20, 2021) (listing detailed factual allegations in the Indictment). And others specify the alleged *actus reus* conduct in the count charging a violation of § 1512(c)(2). *See, e.g.*, *United States v. Robertson*, 2022 WL 969546, at \*3 (D.D.C. Feb. 25, 2022) (alleging that the defendants obstructed, influenced, and impeded an official proceeding "by entering and remaining in the United States Capitol without authority and participating in disruptive behavior"). The Court does not, of course, opine on the sufficiency of such indictments, but does note that the government has declined to pursue, or has failed to secure, such an indictment in this case.